IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT RITA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:23-cv-4931 |
| v. ) | |
| ) | |
| THE VILLAGE OF TINLEY PARK, an ) | |
| Illinois Municipal Body; ORLAND ) | |
| TOWNSHIP, an Illinois Municipal Body; ) | |
| MICHAEL GLOTZ, an individual; and ) | |
| PAUL O'GRADY, an individual. ) | |

**VERIFIED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Representative Robert Rita ("Representative Rita"), by and through his attorneys, Saul Ewing LLP, pursuant to Federal Rule of Civil Procedure 65, moves this Court on an emergency basis for a Temporary Restraining Order against Defendants, the Village of Tinley Park (the "Village"), Orland Township (the "Township"), Village Mayor Michael Glotz ("Glotz"), and Township Supervisor Paul O'Grady ("O'Grady," and together with the Township, the Village, and Glotz, the "Defendants"). In support, Representative Rita states as follows:

**INTRODUCTION**

The Court should enjoin Defendants on an emergency basis from depriving Representative Rita—a member of the Illinois House of Representatives serving its 28th District since 2003—of his First Amendment right to free speech. As the U.S. Supreme Court long-recognized, the "very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *U.S. v. Cruikshank*, 92 U.S. 542,, 552 (1875). The First Amendment expressly guarantees that right against abridgment, "[f]or the right is one that cannot be denied without violating those

1

fundamental principles of liberty and justice which lie at the base of all civil and political institutions." *Duncan v. State of La.*, 391 U.S. 145, 149 (1968). Indeed, inherent in our democratic society is the fundamental First Amendment right of political leaders to speak in public places with their constituents and the public at large and the corollary right of individual citizens to assemble, petition, and speak with those same political leaders in traditionally public spaces:

> The right of access to places traditionally open to the public. . . may be seen as assured by the amalgam of the First Amendment guarantees of speech and press; and their affinity to the right of assembly is not without relevance. From the outset, the right of assembly was regarded not only as an independent right but also as a catalyst to augment the free exercise of the other First Amendment rights with which it was deliberately linked by the draftsmen. The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental. People assemble in public places not only to speak or to take action, but also to listen, observe, and learn.

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 577-78 (1980) (internal citations omitted).

Defendants here have violated Representative Rita's First Amendment rights by improperly barring him from attending <u>a public event</u>, the National Night Out Against Crime ("NNOAC"), which will take place at Freedom Park, <u>a public park</u> in the Village. The NNOAC's purpose is to generate support for the Village and the Township's first responders – causes which Representative Rita strongly supports. The NNOAC is scheduled to take place ***in only five days*** on Tuesday, August 1, 2023. Representative Rita has a Constitutional right to attend the NNOAC. Defendants only notified Representative Rita on July 25, 2023 that they were prohibiting his presence at the NNOAC. Further, they did so after <u>*having previously assured him in writing that he would be permitted to participate*</u>. Emergency injunctive relief is thus warranted and necessary to protect Representative Rita's First Amendment rights.

Defendants' unconstitutional conduct is not an isolated incident. Over the last year, Defendants have engaged in a repeated and systematic campaign to bar Representative Rita from

exercising his First Amendment rights to support his constituents by attending <u>public</u> Village and Township events. Representative Rita, undeterred by Defendants' repeated violations of his First Amendment Rights, requested permission from the Village to attend the NNOAC, a public event that he had regularly attended in years past. On June 12, 2023, the Village police chief assured Representative Rita by email that he would be able to attend and participate in the NNOAC event. Representative Rita then made plans and prepared to meet his constituents at NNAOC. However, on July 25, 2023, only one week before the NNOAC event was scheduled to kick off, the Village informed Representative Rita that it would not grant his request to attend, thus barring him from attending the NNAOC. The Village's denial of Representative Rita's request operates as a full denial of his ability to attend the NNOAC event in his capacity as a State Representative, and as set forth herein, violates his First Amendment right to free speech and gives rise to a deprivation of his Fourteenth Amendment right to procedural due process.

Because the NNOAC is merely days away, Representative Rita has no other recourse but to move this Court on an emergency basis for a temporary restraining order enjoining Defendants from violating Representative Rita's Constitutional rights by prohibiting his attendance at the NNOAC. As set forth herein, Representative Rita conclusively establishes the elements of a TRO: (1) a likelihood of success on the merits of Defendants' clear and blatant violations of his Constitutional rights, (2) an inadequate remedy at law and irreparable harm, as a matter of law, because monetary damages will not provide him with relief and because when a defendant violates a plaintiff's constitutional right to free speech, irreparable harm is presumed, (3) that the balancing of harms weighs in his favor, and (4) that the public interests at stake weigh in his favor, again, as a matter of law. For these reasons, the Court should grant Representative Rita's Emergency Motion for Temporary Restraining Order.

**FACTUAL BACKGROUND**

Representative Rita is a member of the Illinois House of Representatives for the 28th District. (Representative Rita Affidavit, attached hereto as **Exhibit A**, ¶ 2). He has served as representative since January 8, 2003. (*Id*. ¶ 3). Representative Rita's representative district includes parts of Chicago and several of its surrounding suburbs, including the Village and Township. (*Id*. ¶ 4). As an Illinois representative and a public servant, it is imperative that Representative Rita effectively communicate and engage with his constituents and the communities where they reside, including the Village and Township. (*Id*. ¶ 5). Representative Rita strives to personally engage with and connect with his constituents at public events to show support for causes important to the communities that he serves. (*Id*. ¶ 6). Recently, however, the Village and Township have embarked on a consistent and systematic campaign to unconstitutionally prevent Representative Rita from meaningfully participating in various community events. (*Id*. ¶ 7).

**I. From 2022-2023, Defendants Repeatedly Barred Representative Rita from Attending Public Events.**

Village National Night Out Against Crime Event – 2022

On August 2, 2022, the Village had scheduled its annual public NNOAC event. (*Id*. ¶ 8). According to the Village, the purpose of the public event was "to meet and greet local law enforcement professionals, Public Works employees, firefighters, paramedics, Emergency Management Agency and 911 Center personnel, members of the Metra Police Department and the Cook and Will County Sheriff's Police, and representatives from local organizations and businesses." (*Id*. ¶ 9). Representative Rita (in his State Representative capacity) had been a repeat participant at the public NNOAC event in the prior years. (*Id*. ¶ 10). Before the 2022 event, however, Representative Rita received a call from a Village representative stating that he was not

4

allowed to participate that year. (*Id*. ¶ 11). The Village refused to provide an explanation as to why—for the first time—Representative Rita would not be allowed to participate. (*Id*. ¶ 12). Accordingly, Representative Rita did not participate at the 2022 NNOAC public event in his official capacity. (*Id*. ¶ 13).

Village Shred Event – 2022

The next month, on September 24, 2022, Representative Rita collaborated with the Township Highway Commissioner, the Cook County Commissioner, and the Tinley Park Park District to organize a public "Shred Event" to serve the community. (*Id*. ¶ 14). The Shred Event made paper shredders available at a central public location to enable community members to securely and safely shred and recycle their sensitive, personal papers and files. (*Id*. ¶ 14). Representative Rita's office had successfully organized this event annually since 2017, and the Village never put any restrictions on his ability to personally participate. (*Id*. ¶ 16). However, for the 2022 public Shred Event, the Village advised—for the first time—that it required Representative Rita to obtain a Special Event Permit, which are permits exclusively controlled and approved by the Village, or it would not allow the Shred Event to take place. (*Id*. ¶ 17). The Village advised Representative Rita of the Special Event Permit requirement well after he had scheduled and promoted the event to Village residents. (*Id*. ¶ 18). Representative Rita then applied for the requisite Special Event Permit, but his application was denied on the grounds that "the Village is unable to secure adequate traffic control staffing[.]" (*Id*. ¶ 19-20). The Village's actions forced Representative Rita to reschedule the Shred Event to October 15, 2022. (*Id*. ¶ 21).

After finding a new location, on September 20, 2022, Representative Rita applied for another Special Event Permit. (*Id*. ¶ 22). Six days later, the Village denied Representative Rita's second application, citing "safety concerns" and "prior traffic control issues" as the bases for the

5

41920892.5

denial. (*Id*. ¶ 23). These alleged bases were wholly unsubstantiated and disingenuous, however, because Representative Rita's prior Shred Events had never posed any safety or traffic control issues. (*Id*. ¶ 25). Accordingly, Representative Rita did not participate in the 2022 Shred Event in his State Representative capacity. (*Id*. ¶ 26).

Township Pet Palooza Event – 2022

Contemporaneously, Representative Rita was barred from participating in the 2022 Township Pet Palooza event. (*Id*. ¶ 27). Representative Rita had participated in this event in his capacity as State Representative since 2018. (*Id*. ¶ 30). Upon inquiring into the reason(s) for the Township's denial of his request to participate in the 2022 edition of the event, outside counsel for the Township sent Representative Rita a letter falsely claiming that he had threatened and attempted to intimidate Township Administrator Lindsay Trost ("Trost") when he was at the Township Administrative Center on September 22, 2022 to drop off the Pet Palooza application, fee, and signed waiver. (*Id*. ¶ 39). This accusation was completely false and therefore could not constitute a reasonable basis for Representative Rita's denial from participating at the event. (*Id*. ¶ 40). Representative Rita never once threatened or attempted to intimidate Trost with respect to his Pet Palooza application. (*Id*. ¶ 41).

Village "Boo Bash" Event – 2022

Finally, the Village was scheduled to host its annual Halloween Boo Bash on October 30, 2022. (*Id*. ¶ 42). Representative Rita had attended this event in his official State Representative capacity since 2018 (with the exception of 2020 due to the onset of the COVID-19 pandemic). (*Id*. ¶ 43). On September 29, 2022 Representative Rita submitted an application to set up a tent and table at the event in order to provide Village resident attendees with information about Representative Rita, and to give him a platform on which to connect with his constituents. (*Id*. ¶

44-45). On October 5, 2022, Representative Rita was told that he would not be allowed a tent or table at the event because he constituted a "political group" rather than a local business. (*Id*. ¶ 46).

Between the 2022 NNOAC event, the 2022 Shred Event, and the 2022 Boo Bash, the Village and Township have displayed a history of barring Representative Rita from participating in public community events in his State Representative capacity, and have wholly failed to justify their denials, or, have justified their efforts through false or fabricated excuses.

National Night Out Against Crime 2023

Against this backdrop, Representative Rita recently requested to participate at the 2023 edition of the NNOAC event. (*Id*. ¶ 47). The Village Police Department is scheduled to host the NNOAC event on August 1, 2023 at Freedom Park located at 7835 Timber Drive in Tinley Park. (*Id*. ¶ 48). The event, which is promoted on the Village's website, provides attendees the opportunity to "meet and greet members of Tinley Park's Police Department, Fire Department, Emergency Management Agency and Public Works Department . . ." (*Id*. ¶ 49). The event is further described as "promot[ing] police-community partnerships and neighborhood camaraderie to make our neighborhoods safer," according to the National Association of Town Watch, the organization that founded the event in 1984. (*Id*. ¶ 50). The event reportedly will include "visits with personnel from Tinley Park Police, firefighters, public works, Cook and Will County Sheriff's officers, Drug Enforcement Administration, Emergency Management Association, and 911 Center, in addition to Metra police. (*Id*. ¶ 51). Representatives from local organizations, businesses, churches and schools will also be present." (*Id*. ¶ 51). On June 12, 2023, Representative Rita sent an email to Matthew Walsh, the Village Chief of Police ("Chief Walsh"), stating as follows:

> Every year my office participates in [NNOAC event] throughout the 28th District, providing state-related information to constituents. My office has attempted to

7

> contact the Tinley Park Police Department to inquire [a]bout participating in this event in my official capacity as State Representative but has yet to get a response. May you please provide a status on this request?

(*Id*. ¶ 53).

That same day, at 2:24 p.m., Chief Walsh replied to Representative Rita via email and stated:

> ***I had approved your participation*** and I am not sure if the message had been conveyed. Your office has always participated in the past and I can safely assume in the future. The Tinley Park Police Department appreciates your continued support.

(*Id*. ¶ 54).

Representative Rita felt comforted by Chief Walsh's response and believed his participation would be permitted—as it had been in prior years. (*Id*. ¶ 55). Subsequently, on July 25, 2023, Chief Walsh sent an email to Representative Rita in which he reversed his decision from June 12, 2023 approving Representative Rita's participation. (*Id*. ¶ 56). The email provided, in relevant part, as follows:

> I know that ***I had originally agreed to allow participation*** in the Annual [NNOAC event]; however, After careful consideration I will have to deny your request. [NNOAC] is an event to honor law enforcement and I respectfully request that we refrain from any politics.

(*Id*. ¶ 56).

As made explicit by this email, the Village's denial was done for the express purpose of preventing Representative Rita from engaging in political speech at a public forum open to the public, attended by other public officials. (*Id*. ¶ 59). The unexpected reversal in position from Chief Walsh is the most recent in a series of rejected applications by the Village in which Representative Rita has been denied the opportunity to participate in special events hosted by the Village on public property. (*Id*. ¶ 56). Indeed, the Village has demonstrated a pattern of arbitrarily denying Representative Rita's participation in events without a legitimate basis. (*Id*. ¶ 11, 20, 23,

32, 33, 39, 46, 56). This has prohibited Representative Rita from being able to meet with his constituents, listen to their issues and concerns, and provide them meaningful representation. (*Id*. ¶ 59). Moreover, the Village did not provide Representative Rita with any recourse upon denial of his application, such as the opportunity to submit a written response or appeal, or the opportunity to request a hearing. (*Id*. at Ex. 5).

## STANDARD

A TRO is necessary and warranted to protect Representative Rita's constitutional right of free speech. The standard for issuance of a TRO is the same as is required to issue a preliminary injunction. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014). In order to obtain a TRO, then, Representative Rita must demonstrate to the Court that: (1) this case has some likelihood to succeed on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm Defendants will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 2019 WL 6307648, at *2 (N.D. Ill. Nov. 25, 2019). "In the context of a motion for a preliminary injunction [or motion for temporary restraining order], the loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) (reversing denial of a preliminary injunction; an "injunction protecting First Amendment rights is always in the public interest"). Indeed, in First Amendment cases, "once a likelihood of success on the merits has been established, irreparable harm necessarily follows." *Ayres v. City of Chicago*, 966 F. Supp. 701, 717 (N.D. Ill.), aff'd, 125 F.3d 1010 (7th Cir. 1997). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

9

injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)).

## ARGUMENT

Under Federal Rule of Civil Procedure 65, a trial court has substantial discretion to grant a temporary restraining on an emergency basis to preserve the status quo. Fed. R. Civ. P. 65(b)(1)(A); *St. Charles Mfg. Co. v. St. Charles Furniture Corp.*, 482 F. Supp. 397, 405 (N.D. Ill. 1979). "The status quo is the last peaceable, uncontested status of the parties which preceded the actions giving rise to the issue in controversy." *Id*. at 405 (N.D. Ill. 1979).

### REPRESENTATIVE RITA HAS A LIKELIHOOD OF SUCCESS ON THE MERITS.

To demonstrate a likelihood of success on the merits, the moving party needs to only show that it has a "greater than negligible chance of winning." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The threshold for establishing success on the merits is a low bar. *Epic Games, Inc. v. Altmeyer*, 2008 WL 4853634, at *3 (S.D. Ill. Nov. 5, 2008) (citing *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999)). The Village's repeated denial of Representative Rita's right to participate at Village events done expressly to prevent him from engaging in political speech at a public forum constitutes an unlawful deprivation of his First Amendment right to free speech. (*See* Ex. A at Ex. 5 ("I respectfully request that we refrain from any politics.")).

"Freedom of speech has been recognized as one of the preeminent rights of Western democratic theory, the touchstone of individual liberty. In fact, Justice Cardozo characterized it as ". . . the matrix, the indispensable condition of nearly every other form of freedom." *Chicago Acorn v. Metropolitan Pier and Exposition Authority*, 941 F.Supp. 692 (N.D. Ill. 1996), quoting *Palko v. Connecticut*, 302 U.S. 319, 327 (1937). One of the First Amendment's primary concerns is the protection of political speech, as "almost universal agreement supports the conclusion that a

major purpose of the amendment is the protection of free discussion regarding governmental affairs." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

The Supreme Court has recognized that "members of the public retain strong free speech rights when they venture into public streets and parks, 'which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009) (citations omitted). Indeed, when the forum constitutes a traditional public forum such as a park, courts apply one of two levels of judicial scrutiny to determine whether the government has enacted a constitutionally permissible restriction. *Swart v. City of Chicago*, 440 F. Supp. 3d 926, 937 (N.D. Ill. 2020). Courts apply strict scrutiny to content-based restrictions—that is, the state may only "enforce a content-based exclusion" that is both "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Id. (*citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Here, the Village has continuously and systematically denied Representative Rita the opportunity to participate in public Village events. The Village's conduct violates Representative Rita's First Amendment right to his freedom of speech. Further, and because the public event which Representative Rita wishes to attend is at a public park, coupled with the fact that the Village has expressly stated that it denied Representative Rita's participation request specifically because he holds the status of a political figure who would be speaking to members of the public as such, the Village's denial constitutes a content-based restriction subject to strict scrutiny analysis. The Village simply cannot satisfy the strict scrutiny test here because it cannot demonstrate how denying political speech at the NNOAC event (or, perhaps, just Representative Rita's political

11

41920892.5

speech) serves a compelling government interest. *See, e.g.*, *Barnett v. D'Artois*, 331 F. Supp. 1310, 1315 (W.D. La. 1971) (ordinance for park was facially invalid for within its umbrage any political speech and any assembly for political activity is absolutely forbidden). Nor can the Village satisfy the second prong of strict scrutiny showing that it has used the least restrictive means to regulate political speech.

For these reasons, Representative Rita has a likelihood of success on the merits of his free speech claim and satisfies the first prong needed to obtain a temporary restraining order against Defendants.

**REPRESENTATIVE RITA HAS NO ADEQUATE REMEDY AT LAW AND WILL SUFFER IRREPARABLE HARM IF THE VILLAGE IS NOT ENJOINED, AS A MATTER OF LAW.**

Under Seventh Circuit law, "irreparable harm is presumed in First Amendment cases." *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 450-51 (7th Cir. 2022). Further, in First Amendment cases, "once a likelihood of success on the merits has been established, irreparable harm necessarily follows." *Ayres v. City of Chicago*, 966 F. Supp. 701, 717 (N.D. Ill. 1997), aff'd, 125 F.3d 1010. Here, Representative Rita alleges a clear violation of his First Amendment rights. Irreparable harm is therefore presumed.

Additionally, the fact that the Village afforded Representative Rita such short notice (and virtually no notice at all) further supports his establishment of an inadequate remedy at law and irreparable harm. Specifically, Village Police Chief Walsh expressly assured Representative Rita via email on June 12, 2023 that he would be permitted to participate in the public NNOAC event, approximately seven weeks in advance. Six weeks later (and only seven days from the start of the NNOAC event) Chief Walsh changed course and advised that Representative Rita's request was

being denied. Moreover, Representative Rita was not provided with a means of quickly challenging the denial or requesting a hearing.[1]

At this stage, if the Defendants are not enjoined from barring Representative Rita from participating at the NNOAC event, the event will pass without Representative Rita's involvement. Representative Rita will then be obviously unable to turn back the clock and attend the NNOAC event, and monetary damages will not compensate him for his injury. Where a party can show an imminent, time-sensitive injury such as Representative Rita's here, courts have found an absence of a remedy at law and irreparable harm. *Stevens v. United States Dept. of Health and Human Services*, -- F.Supp.3d -- (N.D. Ill. 2023); *see also Doe 1 v. Northshore University HealthSystem*, No. 21-cv-05683, 2021 WL 5578790, *6 (N.D. Ill. Nov. 30, 2021) ("irreparable harm is "harm that 'cannot be repaired' and for which money compensation is inadequate"). Further, the fact that Representative Rita's injury is to one of his Constitutional rights further supports the fact that he has established an inadequate remedy at law and irreparable harm. *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of East Chicago*, 56 F.4th 437, 450 (7th Cir. 2022).

## THE BALANCE OF HARMS WEIGH IN REPRESENTATIVE RITA'S FAVOR.

In balancing the harms, the court considers the harm to the moving party if an injunction is not entered against the harm to the non-moving party if an injunction is granted. *Mintel Int'l Grp., Ltd. v. Neergheen*, 2008 WL 2782818, at *6 (N.D. Ill. July 16, 2008). Where the likelihood of succeeding on the merits is strong, it favors the moving party on a balance of harms analysis. *Wheaton Coll. v. Burwell*, 50 F. Supp. 3d 939, 946 (N.D. Ill. 2014). *Wegener v. Pike*, 2014 WL 788969, at *1 (N.D. Ill. Feb. 27, 2014).

---

[1] § 105.06 of the Village Municipal Code provides for the right to appeal the denial of a Special Event Permit, but requires following an appeal process that will could not possibly be completed within the one-week timeframe Representative Rita was given.

Representative Rita's strong likelihood of success on the merits tips the balance of harms in his favor at the outset. Further, the fact that the harm that will inure to Representative Rita will be a constitutional harm tips the scales even further in his favor. Defendants, on the other hand, will suffer no harm if Representative Rita's requested temporary restraining order is entered. While Defendants have communicated to Representative Rita that the denial of his Special Event Permit was to avoid the topic of "politics" at the NNOAC event, they have not explained what harm Representative's Rita's attendance would cause. Weighing the virtual absence of harm to Defendants against the substantial harm to Representative Rita in not entering the requested temporary restraining order, the balance leans heavily in Representative Rita's favor.

**THE PUBLIC INTEREST MANDATES PERMITTING AN OPEN AND PUBLIC DIALOGUE BETWEEN REPRESENTATIVE RITA AND HIS CONSTITUTES AT NNOAC.**

The court must also determine whether the injunction is in the public interest, taking into account any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018); *see also Pocklington v. O'Leary*, 1986 WL 5748, at *2 (N.D. Ill. May 6, 1986) (holding TRO was in public interest because no third parties' interests were subject to any adverse effects the granting of a TRO). Importantly, the public interest is served by preventing the violation of a party's constitutional rights. *Illusions Too Reality, LLC v. City of Harvey*, 2003 WL 260335, at *8 (N.D. Ill. Feb. 4, 2003). Further, "[a]n injunction protecting First Amendment rights is always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). In this case, the public interest will be served through avoiding the deprivation of Representative Rita's First and Fourteenth Amendment Constitutional rights. (Affidavit of M. Martino, attached as **Exhibit B**, ¶ 5-6). There is no public interest to be served in barring Representative Rita from attending and participating in the NNOAC event in his capacity as a State Representative, as shown through the Defendant's unsubstantiated denial of his Special Event Permit.

14

**N<small>O BOND SHOULD BE REQUIRED</small>.**

Where the moving party has made an overwhelmingly strong display of its likelihood of success on the merits, issuing an injunction with no bond requirement is appropriate. *See California ex rel. Van De Kamp v. Tahoe Regional Planning Agency,* 766 F.2d 1319, 1326 (9th Cir. 1985) (a strong likelihood of success on the merits may favor "a minimal bond or no bond at all"). Rule 65 "leaves to the court's discretion the question of the proper amount of such a bond, and tethers that consideration to the amount of costs and damages sustained by the wrongfully enjoined party." *Whitaker v. Kenosha Unified School District No. 1 Board of Ed.*, No. 16–CV–943–PP, 2016 WL 5239829, * 7 (E.D. Wi. Sep. 22, 2016) (ordering no bond where the defendants will not suffer any financial damage as the result of an injunction). Thus, "a district court may waive the injunctive bond requirement if there is no danger that the opposing party will incur any damages from the injunction." *Bader v. Wernert*, 178 F. Supp.3d 703, 744 (N.D. Ind. 2016) (citing *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010)).

The circumstances of this case warrant waiving the requirement of an injunction bond. There is no foreseeable financial harm that Representative Rita's attendance at the NNOAC event may cause such that he should be required to post a bond. All that will be required is that Representative Rita be permitted to set up a table at the event and greet his constituents and answer their questions. Further, Representative Rita's substantial likelihood of success on the merits further warrants waiving the bond requirement.

**C<small>ONCLUSION</small>**

In sum, Representative Rita has established the requisite elements to obtain a temporary restraining order in this case. He has demonstrated (1) his likelihood of success on the merits regarding his Constitutional claims against the Defendants, (2) that he will be left without an adequate legal remedy and face irreparable harm if a temporary restraining order against

Defendants does not issue, (3) that the balance of harms weighs in his favor, and (4) that the public interest will be served in entering his requested temporary restraining order against Defendants. Further, the circumstances present in this case warrant that Representative Rita not be required to post a bond.

Respectfully submitted,

ROBERT RITA,

*/s/ Nancy DePodesta*
One of his Attorneys

Nancy DePodesta
Nancy.Depodesta@saul.com
Thomas A. Laser
Tom.Laser@saul.com
Saul Ewing LLP
161 N. Clark St., Ste. 4200
Chicago, Illinois 60601
Phone: (312)876-7100

41920892.5