# EXHIBIT A

1

```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

ROBERT RITA,                      )
                                  )
            Plaintiff,            )
                                  )
      vs.                         )  No. 23 C 4931
                                  )
THE VILLAGE OF TINLEY PARK,       )
an Illinois municipal body, et al.,)  Chicago, Illinois
                                  )  July 28, 2023
            Defendants.           )  4:15 o'clock p.m.


               TRANSCRIPT OF PROCEEDINGS -
                  Emergency Motion Hearing
            BEFORE THE HONORABLE MANISH S. SHAH


APPEARANCES:

For the Plaintiff:        SAUL EWING ARNSTEIN & LEHR, L.L.P.
                          BY:  MR. THOMAS LASER
                               MR. GEORGE P. APOSTOLIDES
    (by phone)                 MS. NANCY L. DePODESTA
                          161 North Clark Street, Suite 4200
                          Chicago, Illinois  60601
                          (312) 876-7161


For Defendants Village    GRIFFIN WILLIAMS McMAHON
of Tinley Park, Glotz,    & WALSH, L.L.P.
O'Grady:                  BY:  MR. PATRICK J. WALSH
                          21 North 4th Street
    (by phone)            Geneva, Illinois  60134
                          (630) 457-4242


Also Present (by phone):  Plf. Robert Rita, Deft. Paul O'Grady,
                          Deft. Michael Glotz, and others



               COLLEEN M. CONWAY, CSR, RMR, CRR
                      Official Court Reporter
            219 South Dearborn Street, Room 1918
                     Chicago, Illinois  60604
        (312) 435-5594  colleen_conway@ilnd.uscourts.gov
```

1     (Proceedings heard in open court:)
2         THE CLERK:  23 CV 4931, Rita versus Village of Tinley
3  Park.
4         THE COURT:  Good afternoon, everyone.  This is Judge
5  Shah.
6         We'll start with appearances for the record, starting
7  with plaintiff's counsel who are in the courtroom.
8         If you could just speak into the microphone, please.
9         MR. LASER:  Good afternoon, Your Honor.  Counsel for
10 Representative Rita, the plaintiff, Tom Laser.
11        MR. APOSTOLIDES:  Good afternoon, Your Honor.  George
12 Apostolides also on behalf of Mr. Rita.
13        THE COURT:  And then counsel for the plaintiff on the
14 phone?
15        MS. DePODESTA:  Good afternoon, Your Honor.  Nancy
16 DePodesta.
17        THE COURT:  Do we have counsel for the Village of
18 Tinley Park?
19        MR. WALSH:  Yes.  Good afternoon, Your Honor.
20        This is Patrick Walsh on behalf of the Village of
21 Tinley Park and Michael Glotz.
22        THE COURT:  And then is -- I gather Mr. Glotz is on
23 the line as well, is that right?
24        MR. WALSH:  That's correct, Your Honor.
25        THE COURT:  If Mr. Glotz could just state his name

1   for the record, please.
2       MR. GLOTZ:  Michael Glotz.
3       THE COURT:  Thank you.  And then Mr. O'Grady?
4       MR. O'GRADY:  Good afternoon, Your Honor.  Paul
5   O'Grady appearing *pro se*.
6       THE COURT:  And I gather we don't have the Orland
7   Township -- a representative from Orland Township on the line,
8   is that right?
9       MR. O'GRADY:  Correct, Your Honor.
10      I e-mailed our -- when I was served with it, I
11  immediately e-mailed our township attorneys.  I got a reply
12  back just minutes ago from one of them saying that he was out
13  of town, and they were trying to -- scrambling to find somebody
14  to get up on the call.
15      So at this point, no.  Just me.
16      THE COURT:  The motion for a TRO seems primarily
17  directed at Tinley Park for purposes of what I gather to be the
18  emergency, so I think we can go ahead and proceed.  But if I am
19  mistaken about that, plaintiff can correct me.
20      One question I had for plaintiff is the distinction
21  between attending the event at the park and participating in
22  the event at the park.
23      Is it the plaintiff's position that he's been barred
24  from the park itself and can't set foot in it on this -- on
25  August 2nd?

1  MR. LASER: Your Honor, that's not the plaintiff's
2  position. It is directed towards him appearing in his official
3  capacity and meaningfully participating.
4  And if Your Honor likes, I can get into the
5  distinction, but I want to leave it at that, because that's all
6  Your Honor asked.
7  THE COURT: So let's focus for me a little bit on
8  what's the basis for a First Amendment right to participate in
9  the event.
10  So can -- is it your view that any -- is it a public
11  official or any person are -- they have a First Amendment right
12  to participate in this event and can't be excluded on
13  content-based grounds?
14  MR. LASER: That is generally our position, Your
15  Honor.
16  The event is scheduled to take place on Tuesday,
17  August 1st, from 6:00 to 9:00 p.m. in Tinley Park at a public
18  location. It is intended to raise awareness and, I understand,
19  funds for the Village's first responders, paramedics,
20  firefighters, police officers, and the like.
21  The First Amendment comes into play because by being
22  there in his official capacity, his state representative
23  capacity, Your Honor, it allows Representative Rita to
24  communicate to his constituents his support for those causes.
25  That's where the First Amendment issue comes into

1  play.
2        THE COURT: But why does he -- why does the First
3  Amendment require this event to have him participate?
4        I am trying to understand what the limits, if any,
5  are of the First Amendment right that you're espousing here.
6        If the governor wanted to participate, would they be
7  required to have the governor participate?
8        If the governor of another state wanted to say, "I,
9  too, support this cause, so let me attend and participate,"
10 would the First Amendment require the Village to let that
11 happen or -- let that happen? Yeah.
12       MR. LASER: I'm not positive where the line is, Your
13 Honor. But I will note, Representative Rita -- this event is
14 taking place in his district, so certainly his message is
15 directly pertaining to this district.
16       And I believe that any First Amendment right would be
17 much stronger for a politician, such as Representative Rita, to
18 attend and communicate his support for these causes at an event
19 in his district.
20       THE COURT: And it has to be at the event itself?
21 It's not adequate to vindicate his First Amendment rights for
22 him to be allowed to be there, walk into the park, stand
23 amongst the people that are attending it, and tell anyone who's
24 willing to listen, "I am State Representative Rita, and I
25 support this cause. I am here because I support it as well"?

1    I don't understand the Village to prohibit him from
2    doing that, from going to the park, standing there and saying
3    what he wants to say to the people around him.
4        MR. LASER:  I see the distinction Your Honor is
5    raising.  I will say, him attending in his personal capacity
6    and just announcing who he is, I don't believe that that's
7    sufficient here.
8        In this case, again, this is a public event where
9    Representative Rita would like to show his support for his
10   constituents.
11       The importance of him having his own table or place
12   to stand, if you will, I almost liken it to a professor having
13   office hours, a place where he can be made aware of -- or the
14   constituents can be aware that he is present.  They can come
15   and talk to him about specific state issues that he's involved
16   with that affect them directly.
17       So I think that's the distinction here.
18       THE COURT:  But then does that mean that if a
19   university, a public university is holding an event and a
20   professor says, "I'd like to hold my office hours at that
21   event.  You must allow me to do that," that the university then
22   would be required by the First Amendment to have him there
23   holding office hours?
24       MR. LASER:  I'm sure there are distinctions for
25   public universities as opposed to an event of this nature.

1  But to answer Your Honor's question, yes, I believe
2  that the First Amendment would still be implicated.
3  THE COURT: Well, not just implicated. It would
4  require the university who's hosting an event about a
5  particular issue to allow an employee to have a table and say,
6  "I want to have my office hours here and now because I have an
7  interest in communicating to my students."
8  MR. LASER: That's right. And the denial of that
9  request, as we understand it, would amount to a First Amendment
10  violation.
11  I believe that's what Your Honor was getting at with
12  your question a minute ago.
13  THE COURT: And what's your best authority for that
14  proposition that the First Amendment applies in that way?
15  MR. LASER: I believe those are the cases we cited in
16  our introductory paragraph, Your Honor, *Richmond Newspapers*, a
17  U.S. Supreme Court case from 1980, as well as -- I believe
18  that's the primary authority.
19  I believe that's the case that stands for the
20  proposition that those affiliated with the political sphere
21  have a First Amendment right to communicate their support about
22  certain events to their constituents or to make themselves
23  available to their constituents at public events.
24  THE COURT: But as a participant in the event itself
25  as opposed to just standing there?

1  I mean, he can be in his official capacity, stand in
2  the park and say, "I'm here in my official capacity, and I'm
3  here to talk to my constituents."
4  Why does he need the -- why does the First Amendment
5  require this event to say, "We are with him and we stand with
6  him, and he is participating in this event that we're putting
7  on"?
8  MR. LASER: Well, I will add, Your Honor, it's my
9  understanding that other elected officials have been granted
10 the opportunity to attend in their official capacities, elected
11 officials from the Park District, Sheriff's Office, and School
12 District. I believe that that in and of itself shows a First
13 Amendment violation.
14 THE COURT: Mr. Walsh, can I --
15 MR. WALSH: Yes.
16 THE COURT: -- ask you if -- to get the position of
17 the Village at this point?
18 MR. WALSH: Yes. Yes, Your Honor. Thank you.
19 The mission statement of the National Night Out, Your
20 Honor, is that it's a national community-building campaign that
21 promotes police/community partnerships. That's the purpose of
22 this event in Tinley Park.
23 Mr. Rita is more than welcome to attend. His
24 verified emergency motion says that he was -- that they are
25 "prohibiting his presence" at the event. That's on page 2.

1  That's not true.  He's more than welcome to come.  He
2  can talk to his constituents.  He can exercise his First
3  Amendment rights to the extent that they apply under these
4  circumstances.
5  I am not saying that he has any particular right, but
6  to the extent that they argue that there would be a violation
7  from him not being able to speak, he's able to speak.  He can
8  wear a "Bob Rita" pin on his lapel.
9  There is no evidence of any content-based restriction
10  here.  There are no other politicians that are setting up
11  booths or doing anything like that.  This is purely a police
12  and local community event.
13  There is no restriction on Mr. Rita's speech based on
14  his content.  There are no politicians with tables.  And,
15  frankly, Mr. Rita has failed -- has really failed to
16  distinguish between being present in a personal or professional
17  capacity.
18  I struggle with that, although I only got this case
19  about a half an hour ago.  He can be there in his professional
20  capacity, speaking with his constituents as much as he likes.
21  I just don't think that he has a First Amendment right to a
22  table or something else that he's looking for.
23  So, again, this is not -- there's nothing directed at
24  Mr. Rita.  This is just the manner in which that this event is
25  held.

1 And also, I don't believe that Mr. Rita has applied
2 for any type of permit at this event. My understanding is he
3 just sent an e-mail to the chief of police, and apparently
4 there was an e-mail back from the chief that could be construed
5 that Mr. Rita was not -- could not attend.
6     I read it myself. I think it would -- whatever that
7 e-mail says, Mr. Rita is welcome at the event.
8     THE COURT: Is --
9     MR. WALSH: So --
10     THE COURT: Do people -- other people who are
11 participating, for example, law enforcement personnel,
12 Sheriff's Office personnel, were they required to have a
13 permit? Did they apply for a permit to participate?
14     MR. WALSH: No. I think the way that it works is
15 that there are certain invitations that go out to, like,
16 community businesses and the Boy Scouts. And I think there is
17 a permit requirement if somebody has a setup of a certain size.
18 I'm not sure of that. But -- I am not sure of the details of
19 that. But I think that's the only time when there's a permit
20 involved.
21     But in terms of people participating, they just get
22 an invitation from the Village -- you know, it's been the same
23 for 20 years -- and it's focused on police/community relations.
24     There are no -- I can say, there are no invitations
25 to politicians or invitations to present political speech.

1          THE COURT: Well, might that --
2          MR. O'GRADY: Your Honor --
3          THE COURT: Might that --
4          MR. O'GRADY: -- this is Paul O'Grady. Could I just
5   add in just there that I didn't even know about this event, and
6   I wasn't invited to speak at it, as the township supervisor in
7   my professional capacity, or in my personal capacity.
8          I didn't know about this National Night Out other
9   than the Board canceled their normal meeting on that second
10  Tuesday. That's all I knew.
11         So I didn't -- I mean, just to add to that, I did not
12  get personally an invite. Thank you.
13         THE COURT: Well, is that a problem, that the Village
14  is hosting this event and not allowing political speech to
15  occur at all? Is --
16         MR. O'GRADY: Well, well --
17         THE COURT: Why isn't that a problem?
18         MR. O'GRADY: I --
19         MR. WALSH: So, Judge --
20         MR. O'GRADY: I suppose I could --
21         THE COURT: Hold on. Hold on, both of you.
22  Mr. Walsh only, please.
23         MR. WALSH: Thank you, Your Honor.
24         There is no bar on political speech. Mr. Rita is
25  welcome to attend and engage in political speech.

1    THE COURT: He's just not allowed to do it with
2 official -- under the official auspices of the event, is that
3 right?
4    MR. WALSH: I don't think he -- I mean, if you are
5 intimating that he would be a sponsor of the event or
6 something, I don't think that that's the case. But, you know,
7 he would have the same rights to engage in political speech as
8 any elected official that chose to attend. His speech is not
9 being restrained in any way.
10    THE COURT: Can he show up with a table?
11    MR. WALSH: No, I don't believe that he's permitted
12 to bring a table.
13    I don't know if he's asked for a table. I don't know
14 if that's his -- in his complaint. But I -- obviously, you
15 know, they don't -- there's not the capacity for everyone to
16 bring a table who wants to come.
17    But he can stand there and, you know, engage with his
18 constituents. And I don't think that his rights would extend
19 beyond that.
20    THE COURT: And what form of -- what's the injunction
21 that you're seeking me to enter on behalf of plaintiff? What's
22 the language you would want the injunction to read?
23    MR. LASER: Your Honor, I assume that's directed
24 towards plaintiff's counsel.
25    THE COURT: It is. Thank you.

1      MR. LASER: The order would prohibit the Village from
2   denying Mr. Rita the opportunity to set up a table. And I can
3   work out the language of this, but include something on the
4   table displaying that he is there in his representative
5   capacity.
6      I'm sure Your Honor can imagine some sort of like a
7   bare-type table with a cloth over with "Representative Rita" on
8   it.
9      That's all we're seeking here, Your Honor.
10     THE COURT: And if he is allowed or the Village isn't
11  doing anything to stop him from going there and standing and
12  speaking with whoever is around without a table, why is the
13  harm to him from not having a table with his banner on it so
14  great and irreparable that an injunction ought to compel the
15  Village to allow him to do it?
16     MR. LASER: It changes the way that he and his
17  constituents can engage with one another, Your Honor.
18     If he's there walking around with a pin -- you can
19  imagine being at an event like this. It's much harder to find
20  someone. So if there's a politician whose name you've seen,
21  it's much easier to find that person, ask them meaningful
22  questions about their policies and how they impact your
23  district if he has a centralized location.
24     Not allowing him the table, which he asked for months
25  ago, was assured he would get, and just on Tuesday was denied

1  the opportunity to have, if he's not given that, his
2  constituents might not know he's there and they might be
3  deprived of the opportunity to ask him meaningful questions
4  about his policies or things that affect their district.
5           That's the irreparable harm, Your Honor.  And the
6  event is just coming up on Tuesday.
7           THE COURT:  Mr. Walsh, is there anything further
8  you'd like to say on behalf of the Village?
9           MR. WALSH:  Yes.  I think that whether Mr. Rita had a
10 table or stood where a table would be, he can only speak to a
11 certain number of constituents at once.  And so any harm or any
12 speculation that he would suffer some irreparable harm by being
13 able to speak with less constituents at this meeting is, in my
14 view, too speculative to be deserving of the relief.  And that
15 his rights are protected enough, the fact that he's allowed to
16 just go there and just speak with his constituents.
17          Thank you, Your Honor.
18          THE COURT:  Thank you.
19          Any last word on behalf of plaintiff here in the
20 courtroom?
21          MR. LASER:  Yes, Your Honor.
22          At the very least, Representative Rita should not be
23 barred from being there in his individual capacity and giving
24 political speech.  I say that because the denial e-mail that he
25 received said, from the chief of police, Mr. Walsh, not to be

1  confused with Counsel Walsh: "I respectfully request that we
2  refrain from any politics." At the very least, that is a
3  denial of Representative Rita's First Amendment right to free
4  speech.
5         So at the very least, the Village should be enjoined
6  from denying him that opportunity.
7         THE COURT: In light of the representations that have
8  been made this afternoon, it seems to me that that e-mail may
9  not be the current position of the Village in light of what
10 their representatives are saying this afternoon.
11        You at least agree with me that you also heard them
12 say that he can be there and engage in political speech?
13        MR. LASER: I did hear counsel or a *pro se* party.
14 Obviously, I didn't know that before we walked into Your
15 Honor's courtroom today, though.
16        THE COURT: Understood. Anything else?
17        MR. LASER: I believe that's all, Your Honor.
18        MR. O'GRADY: Your Honor, this is Paul O'Grady. This
19 is Paul O'Grady. I'm sorry, Your Honor.
20        You know, since this is not until Tuesday night, and
21 I don't have counsel present, you know, could we have a short
22 briefing schedule on this?
23        I haven't even reviewed this. Could I have till
24 Monday to file something?
25        THE COURT: Well, no. Here's what we're going to do.

1  And I'll now tell you what's going to happen procedurally.
2  I will take the motion under advisement right now,
3  and if I can, I will issue a decision as soon as I can, within
4  the next few minutes, and we'll get it on the docket.
5  If I can't, and if I think any court needs additional
6  briefing on it -- I am not going to be the emergency judge on
7  Monday, and it will have to go a different judge.
8  I am going to try and avoid that burden on a
9  colleague. But if I can't, then -- if I can't resolve this
10 based on what -- the discussion we've had this afternoon, then
11 there is time until Tuesday, and I'll certainly make sure that
12 everyone has had an opportunity to be heard thoughtfully if I
13 can't resolve the motion in the next few minutes.
14 And so if I can't, I'll also put an order on the
15 docket saying the motion will have --
16      (Plaintiff enters in person.)
17      THE COURT:  -- been referred to the next emergency
18 judge on Monday.
19 My understanding is Judge Tharp is not available on
20 Monday either, so it will have to go to the next emergency
21 judge. But I think it would be better for everyone if I can
22 resolve this based on the arguments that have been made this
23 afternoon, that I resolve it now so that you're not going to
24 multiple judges. And there might be a risk of inconsistency if
25 that happens. So I'll endeavor to avoid that as best I can.

1 I do appreciate that this is being heard on an
2 emergency basis. It's on a limited record. Anything I say is
3 not likely to be the final word or binding on the case as it
4 moves forward.
5 There are a number of allegations about historical
6 events that both shed light on the circumstances of what's
7 going to happen on Tuesday and the overarching claims that are
8 brought in the complaint which relate to other events, not just
9 the event that's coming up on Tuesday. And nothing I say in
10 the context of this motion is a comment on the merits of any of
11 those issues or disputes.
12 So I'll take it under advisement. Thank you for
13 scrambling to be on the line and to come into the courthouse
14 for the motion. I'll try to get something on the docket in the
15 next few minutes or so and give you further direction that way.
16 MR. LASER: Thank you, Your Honor.
17 MR. O'GRADY: Thank you, Your Honor.
18 MR. LASER: And it's not lost on us that it is a
19 Friday afternoon. So thank Your Honor, thank your staff for
20 accommodating us today.
21 THE CLERK: Court is now in recess.
22 (Proceedings concluded.)
23
24
25

|     |                                                                                    |
| --- | ---------------------------------------------------------------------------------- |
| 1   | C E R T I F I C A T E                                                              |

           C E R T I F I C A T E

I, Colleen M. Conway, do hereby certify that the foregoing is a complete, true, and accurate transcript of the Emergency Motion Hearing proceedings had in the above-entitled case before the HONORABLE MANISH S. SHAH, one of the Judges of said Court, at Chicago, Illinois, on July 28, 2023.

*/s/ Colleen M. Conway, CSR, RMR, CRR*          *08/03/2023*
         Official Court Reporter                    Date
         United States District Court
         Northern District of Illinois
                Eastern Division