IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Rita, | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-4931 |
| v. | ) | |
| | ) | Hon. John J. Tharp, Jr. |
| Village of Tinley Park, et al., | ) | |
| | ) | Hon. Heather K. McShain |
| Defendants. | ) | |

**DEFENDANTS ORLAND TOWNSHIP'S AND PAUL O'GRADY'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

NOW COME Defendants, ORLAND TOWNSHIP and PAUL O'GRADY (together as the "Township Defendants"), by and through their attorney, K. Austin Zimmer, and for their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), state:

**INTRODUCTION**

Plaintiff, a State Representative, claims that Orland Township and its Supervisor, Paul O'Grady, along with the Village of Tinley Park and its Mayor, Michael Glotz, violated his constitutional rights when they denied his request to be a featured participant at the Village's 2023 National Night Out Against Crime (NNOAC) event. As Plaintiff acknowledges, however, this event was hosted by the Village, not the Township. The Village and Township are separate governmental entities, and Plaintiff does not allege that O'Grady had authority to make policy decisions for the Village. Still, Plaintiff contends that O'Grady violated his constitutional rights only when he and Glotz supposedly instructed the Village's Police Chief to deny his request to participate in his official capacity as a State Representative at the Village's NNOAC event. With respect to the Township, Plaintiff appears to allege only that the Township denied his request to participate in his official capacity as a State Representative at its 2022 "Pet Palooza" event.

In fact, although Plaintiff was free to attend the NNOAC, Pet Palooza, and other past events, he nonetheless asserts that all Defendants violated his First Amendment right to freedom

of speech when they refused to grant him the privilege of having his own "table" at these events and thereby participate in his official capacity as a State Representative. Plaintiff similarly contends that the Village Police Chief's withdrawal of an earlier commitment to allow him to participate in his official capacity as a State Representative at the Village's NNOAC event violated his Fourteenth Amendment right to procedural due process. With respect to the Township Defendants, however, Plaintiff's claims fail because the Complaint does not allege facts from which it can plausibly be inferred that either the Township or O'Grady caused or participated in any alleged constitutional deprivation in this matter. Regardless, because neither the First nor the Fourteenth Amendment compels any Defendant to provide Plaintiff with special speaking privileges, his Complaint must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

## ALLEGATIONS & PROCEDURAL BACKGROUND

Plaintiff is the State Representative for Illinois' 28th District. *See* Dkt. # 1, ¶¶ 16-18. The Village of Tinley Park (the "Village") hosts an annual National Night Out Against Crime (NNOAC) event to provide residents with the opportunity "to meet and greet" local police and emergency first responders in order to "honor law enforcement" and foster "police-community partnerships and neighborhood camaraderie." *See* Dkt. # 1, ¶¶ 23, 58, 65. Plaintiff was allowed to participate in past NNOAC events as a State Representative, but, starting in 2022, the Village allegedly began declining his requests to participate in the NNOAC event in his official capacity as a State Representative. *See* Dkt. # 1, ¶¶ 24-27, 65-69. He similarly contends that Defendants have denied his requests to "host," have his own "table," or otherwise be a featured participant – due to his status as a State Representative – at other past Village and Orland Township (the "Township") events. *See* Dkt. # 1, ¶¶ 37, 40-41, 50-54. Notably, however, Plaintiff does not allege that Defendants barred him from physically attending or otherwise restricted his communications with attendees at any of these events. *See* Dkt. # 1, ¶¶ 22-55.

The Village's most recent NNOAC event was held in Freedom Park on August 1, 2023. *See* Dkt. # 1, ¶ 57. On June 12, 2023, Plaintiff emailed the Village's Chief of Police, Matthew Walsh, requesting to participate in the upcoming NNOAC event in his "official capacity as a State Representative." *See* Dkt. # 1, ¶ 62. Chief Walsh approved the request; however, he subsequently advised Plaintiff that his request to participate in his official capacity would be denied because the purpose of the NNOAC event was "to honor law enforcement" in a non-partisan and non-political atmosphere. *See* Dkt. # 1, ¶¶ 63, 65. Plaintiff contends, upon "information and belief," that Village Mayor Michael Glotz ("Mayor Glotz") and Township Supervisor Paul O'Grady ("Supervisor O'Grady") "directly instructed Chief Walsh" to deny his request to participate in the NNOAC event in his official capacity as a State Representative because Mayor Glotz had supposedly informed Plaintiff "at a recent meeting" that "political figure[s]" could not be featured participants at the NNOAC event. *See* Dkt. # 1, ¶¶ 67-69. Plaintiff, however, neither claims that Supervisor O'Grady took part in this alleged conversation nor alleges any other facts concerning the Township or Supervisor O'Grady's role in the decision to deny his participation request. *See gen*. Dkt. # 1.

Plaintiff did not appeal Chief Walsh's alleged denial under the procedures outlined in the Village's Code of Ordinances, but instead filed the instant action as well as an Emergency Motion for a Temporary Restraining Order ("TRO") with this Court on July 28, 2023. *See* Dkt. # 1, ¶¶ 72-73; *see gen*. Dkt. # 4. At the TRO Hearing, Plaintiff confirmed that the Village had not barred him from attending the NNOAC event, but rather had denied his request to be a featured participant, *i.e.*, from "having his own table" and participating in the event in his official capacity as a State Representative. *See* Dkt. # 24-1, p. 3:16-4:3, 5:20-6:17.[1]

---

[1] The Court may take judicial notice of undisputed facts encompassed within the record when deciding on a motion to dismiss. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1080-82 (7th Cir. 1997); *See Tucker v. City of Chicago*, 907 F.3d 487, 490 n.1 (7th Cir. 2018) ("matters of public record . . . may be judicially noticed without converting a motion to dismiss into one for summary judgment").

In Count I, Plaintiff contends that by denying his requests to be a featured participant at community events and attend in his capacity as a State Representative, Defendants have deprived him of a "public platform" through which "to meet with his constituents, listen to their issues and concerns, and provide them with meaningful representation" in violation of his First Amendment right to freedom of speech. *See* Dkt. # 1, ¶¶ 2, 71, 85-86. In Count II, Plaintiff declares that because Chief Walsh initially approved his request but then withdrew the approval, and because the Village did not provide him with "any recourse upon denial of his request," Defendants have also violated his Fourteenth Amendment right to procedural due process. *See* Dkt. # 1, ¶¶ 97-103.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (7th Cir. 2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If, however, a plaintiff's allegations are not legally sufficient to state a claim upon which relief can be granted, the court must dismiss the complaint. *Maple Lanes, Inc. v. Messer*, 186 F. 3d 823, 824-25 (7th Cir. 1999).

## ARGUMENT

The Complaint fails to state any claim against the Township Defendants because Plaintiff does not allege facts from which it can plausibly be inferred that the Township Defendants played any role in any alleged deprivation of Plaintiff's constitutional rights. Regardless, Count I fails to state a section 1983 claim for a violation of the First Amendment because Defendants' events constitute government speech and, even if not government speech, the special "tables" to which Plaintiff seeks access constitute a non-public forum in which reasonable restrictions on speech are permissible under the First Amendment. Count II similarly fails to state a section 1983 claim for a

Fourteenth Amendment procedural due process violation because Plaintiff does not have a protected property interest in the right to be a featured participant at the NNOAC or any other event and, in any case, he was not denied a meaningful opportunity to challenge the denial of said request. As such, the Complaint must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

   I.  **Plaintiff Does Not Plausibly Allege that the Township Defendants Took Any Action or Otherwise Played Any Meaningful Role in this Matter**

To state a claim for a constitutional violation under section 1983, a plaintiff must plausibly allege that a defendant deprived him of a of right secured by the Constitution or federal statute while acting under color of law. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998). Importantly, an individual "cannot be held liable in a [section] 1983 action unless he <u>caused or participated</u> in an alleged constitutional deprivation." *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (emphasis added). Likewise, a municipality cannot be held liable under section 1983 unless the alleged constitutional deprivation is committed by an individual with "final policymaking authority." *FKFJ, Inc. v. Village of Worth*, 466 F. Supp. 3d 853, 874 (N.D. Ill. 2020).

Here, Plaintiff's claims are premised upon the denial of his request to be a featured participant at Defendants' events, including the Village's 2023 NNOAC event. *See* Dkt. # 1, ¶¶ 74-103. The only allegation even implicating the Township Defendants in those decisions is Plaintiff's "belief" that Supervisor O'Grady, "directly instructed Chief Walsh to deny [Plaintiff's] application." *See* Dkt. # 1, ¶ 67. Nowhere does Plaintiff allege the basis for said belief nor does he allege that Supervisor O'Grady had the policymaking authority to issue said instruction to the Village's Chief of Police or that he or the Township otherwise had any control over the Village's NNOAC event. *See gen*. Dkt. # 1; *see also* Dkt. # 24-1, p. 11:4-12 (Supervisor O'Grady explaining during TRO Hearing that he "didn't even know about" the NNOAC event and certainly "wasn't invited to speak at it"). Plaintiff likewise does not allege that Supervisor O'Grady was in any way

involved in the Township's alleged rejection of his request to participate in his official capacity as a State Representative at the Township's 2022 Pet Palooza event. *See* Dkt. # 1, ¶¶ 38-49.

Without any supporting facts of any kind, it cannot be said that the Township Defendants deprived Plaintiff of his constitutional rights in this case. *See Brooks v. Ross*, 578 F. 3d 574, 580-82 (7th Cir. 2009) (affirming dismissal of due process claim based in part on plaintiff's failure to plead facts indicating defendant's "personal involvement"); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1047-1049 (N.D. Ill. 2018) (granting motion to dismiss where complaint "barely mentioned" certain defendants and more readily established that any constitutional deprivations were "based on decisions made" by other actors); *see also Geft Outdoors, LLC v. City of Westfield*, 922 F. 3d 357, 369 n.9 (7th Cir. 2019) (finding plaintiff did "not properly allege that [city] could be held liable under [section] 1983" because he did not allege that individual defendant responsible for claimed constitutional deprivation "was a final policy-maker"). Accordingly, Plaintiff's claims against the Township Defendants must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

## II. Count I Must Be Dismissed Because Defendants' Events Constitute "Government Speech" to Which the First Amendment Does Not Apply

The First Amendment "restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467 (2009). The First Amendment does not restrain government "from controlling its own expression" *Summum*, 555 U.S. at 467. Government "has the right to speak for itself" and, in so doing, can freely "select the views that it wants to express" and similarly may decline to express views with which it disagrees. *Id*. at 467-68; *Shurtleff v. City of Boston*, 596 U.S. 243, 251-52. In other words, the "[g]overnment's own speech . . . is exempt from First Amendment scrutiny." *Id*.

Government speech occurs when the government "effectively controls" or has "final approval authority" over the message that is sent. *Id*. at 473. This is true regardless of whether the

government itself does the speaking or whether the government uses a third party to express its message. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 217 (2015). In fact, when the government exercises its discretion "to select between the speech of third parties for presentation through communication channels owned by the government," that act in and of itself is "expressive conduct" that qualifies as "government speech." *Summum*, 555 U.S. at 468; *Sutliffe v. Epping School Dist.*, 584 F. 3d 314, 330 (1st Cir. 2009). Put differently, in choosing to promote the speech of some third parties over others, the government conveys an important message to the public about its values. *Summum*, 555 U.S. at 468; *Sutliffe*, 584 F. 3d at 330-31.

Here, the Village hosted the 2023 NNOAC event at a public park. *See* Dkt. # 1, ¶ 57. The purpose of the NNOAC event was to "honor law enforcement" and promote "police-community partnerships" by allowing residents to "meet and greet" local law enforcement officers and first responders. *See* Dkt. # 1, ¶¶ 57-65. To this end, the Village invited certain law enforcement officials and organizations to act as "hosts" by granting them access to special "tables" at the event. *See* Dkt. # 1, ¶¶ 57-60; *see* Dkt. # 24-1, p. 5:20-6:16, 8:16-9:25, 10:10-25. Similarly, to keep the NNOAC event's focus squarely on local law enforcement and first responders, the Village did not permit <u>any</u> political organizations or politicians to have these special "tables" while attending the event. *See* Dkt. # 1 ¶¶ 65-69; *see* Dkt. # 24-1, p. 8:16-9:25, 10:10-25.

Thus, in putting on the NNOAC event and in exercising discretion to invite law enforcement and first responder organizations to be featured participants and have special tables while declining to grant partisan political officials access to the same platform, the Village – and the Township Defendants to the extent they are alleged to have been involved – conveyed an important message to the public about the non-partisan nature of their support for local law enforcement and first responders. *See Summum*, 555 U.S. at 472, 481 (holding that city engaged in "government speech" and did not violate plaintiffs' free speech rights when it accepted some

privately donated monuments for display in a public park but rejected other proposed monuments because, by choosing which monuments to display, city conveyed an important government message about its identity to the public). Even though this message was conveyed through local law enforcement and first responder attendees, Defendants still "effectively controlled" the message because they exercised "final approval" over who would be invited and permitted to be a featured participant at the event. *See Walker*, 576 U.S. at 213 (holding that Texas's approval of some specialty license plate designs but not others constituted "government speech," despite fact that designs were independently submitted, because Texas "effectively controlled the message" conveyed on each specialty plate "by exercising final approval authority of their selection").

To the extent Plaintiff is asserting a separate First Amendment claim against the Township based upon its purported denial of his request to have a "table" and be a featured participant at the 2022 Pet Palooza event, the outcome is exactly the same because the Township "effectively controlled" the message conveyed to the public via its decision to allow certain vendors to have tables at the event while denying tables to "any vendors affiliated with politics." *See* Dkt. # 1, ¶¶ 42, 53; *see Lehman v. City of Shaker Heights*, 418 U.S. 298, 304 (1974) (blanket refusal to grant advertising space to political candidates did not violate First Amendment); *see also Sutliffe*, 584 F. 3d at 332-33 (where town had an "unwritten policy" of refusing to add "political" hyperlinks to its town website, town's refusal to add hyperlink to "partisan political speech" did not violate the plaintiff's free speech rights because it was an expressive act that constituted government speech).

Tellingly, Plaintiff claims that Defendants' refusal to grant him the privilege of having a table and participating in his official capacity as a State Representative at the NNOAC event and other past events has deprived him of the "meaningful ability to communicate to his constituents his support for the Village and Township first responders." *See* Dkt. # 1, ¶ 85. But, as Plaintiff has already conceded and as the court recognized at the TRO hearing, that is just not true. *See gen*.

Dkt. Nos. 1 & 24-1. The Village did not prohibit Plaintiff from entering Freedom Park, from attending the NNOAC event, or from otherwise engaging in any protected First Amendment activity at the NNOAC event. *See* Dkt. # 24-1, p. 5:20-6:17, 7:24-9:25. Plaintiff likewise does not allege that the Township Defendants prohibited him from attending the Pet Palooza event or restricted his First Amendment activities while at that event. *See* Dkt. # 1, ¶¶ 38-49. In similar circumstances, the Supreme Court has held that such conduct qualified as "government speech." *See Summum*, 555 U.S. at 468 (holding that city's act of conveying its own message by choosing to publicly display certain monuments over others was "government speech" that did not violate First Amendment because city's actions did not in any way "abridge the traditional free speech rights – the right to speak, distribute leaflets, etc. – that may be exercised by [plaintiffs] and others in [the] park"). As such, Count I must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

### III. Count I Must Be Dismissed Because Plaintiff Seeks Access to a "Nonpublic Forum," and Therefore Defendants' Alleged Denials of His Requests to Be a Featured Participant at Defendants' Events Did Not Violate the First Amendment

Even if Defendants' alleged conduct does not amount to "government speech," Count I nonetheless fails because the special tables to which Plaintiff seeks access constitute a "nonpublic forum." The Supreme Court has long recognized that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government. *U.S. Postal Service v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 129 (1981). Instead, the Supreme Court has identified three distinct "forums" that offer different degrees of First Amendment protection: (i) the traditional public forum, (ii) the limited public forum, and (iii) the nonpublic forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46 (1983).

The "traditional public forum" encompasses public areas, such as streets and parks, in which the right to engage in expressive activities has traditionally been recognized. *Id*. at 45. In a

traditional public forum, the government may only enforce content-based exclusions or content-neutral time, place, and manner restrictions on speech if the regulation satisfies strict scrutiny review. *Id*. Similarly, a "limited public forum" encompasses public property that, while not traditionally open for expressive activity, has nonetheless been designated by the government for such use by either the public at large, certain speakers, or for discussion of certain subjects. *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985). Any content-based restrictions in a limited public forum must again satisfy strict scrutiny review. *Perry Educ. Ass'n*, 460 U.S. at 46. Finally, a "nonpublic forum" consists of public property that is neither traditionally open to the public for expressive activity nor has been specifically designated as open for such activity by the government. *Id*. Government can reserve a nonpublic forum for a specific purpose, "communicative or otherwise," so long as any restrictions on speech are reasonable and are not an effort to suppress expression merely based on the speaker's views. *Id.*

However, "forum analysis is not completed merely by identifying the government property at issue." *Cornelius*, 473 U.S. at 801. Rather, the forum is defined by the "specific access sought by the speaker" as well as the specific "location and purpose" of the property at issue. *Id.*; *U.S. v. Kokinda*, 497 U.S. 720, 728-29 (1990). When a speaker seeks "general access" to public property, the forum encompasses the entire physical property. *Cornelius*, 473 U.S. at 801. Similarly, if the "location and purpose" of the property at issue is one that the government has declared open to all members of the general public for assembly or debate, then the First Amendment demands that any restriction on access sought for protected expression satisfy strict scrutiny. *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 314 (S.D. N.Y. 2000).

If the government, to serve a legitimate purpose, "carves out, within traditional public forum property, a portion of space not open to the general public, either specifically or incidentally limiting some expressive activities to particular speakers or subjects, the Court has recognized that

resulting forum as a nonpublic forum where the regulation of speech is subject to a lower grade of First Amendment review." *Id*. A nonpublic forum is characterized by the government's intention to create a forum in which it gives "selective access" to a "particular class of speakers" whose members must then individually "obtain permission" to use the property in the manner prescribed by the government. *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 679 (1998).

Here, while the Village's NNOAC event took place in Freedom Park, Plaintiff seeks more than "general access" to the park. *See* Dkt. # 1, ¶ 57; Dkt. # 24-1, p. 3:16-4:3. Instead, he seeks "specific access" to a "table" so that he can be a featured participant and attend in his official capacity as a State Representative. *See* Dkt. # 24-1, p. 3:16-4:3; 6:4-16. By design, however, the Village has only extended the opportunity to have a "table" and be a featured participant at the NNOAC event to local law enforcement personnel and organizations because local law enforcement personnel are the specific class and local law enforcement itself is the specific subject for which the NNOAC event was created. *See* Dkt. # 1, ¶¶ 58-65; *see* Dkt. # 24-1, p. 8:16-9:25, 10:14-25. The Township similarly limited access to such "tables" at its 2022 Pet Palooza event by refusing to accept applications from "any vendors affiliated with politics." *See* Dkt. # 1, ¶ 42.

As such, between the specific access sought by Plaintiff and the Defendants' purposes for holding the events and limiting access to "tables" at the events, it is clear that the forum at issue is the "tables" and the accompanying ability to be a featured participant at these events. *See Forbes*, 523 U.S. at 680 (holding that televised public debate for congressional seat hosted by public broadcaster was a nonpublic forum because debate "did not have an open microphone format" and broadcaster "reserved eligibility for participation in the debate" to only a certain class of candidates); *Giuliani*, 105 F. Supp. 2d at 317 (holding that city's alteration of select portions of public spaces traditionally devoted to unrestricted public access into private spaces reserved for the display of cow parade sculptures created a nonpublic forum).

Plaintiff, moreover, is neither a member of local law enforcement nor a vendor of pet-related items but is rather a partisan elected official; he is not a member of the class for whose benefit the forums, *i.e.*, the "tables," were created. *See* Dkt. # 1, ¶¶ 16-20, 40; *see* Dkt. # 24-1, p. 8:16-9:25, 10:14-25. A "speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum or if he is not a member of the class of speakers for whose especial benefit the forum was created." *Cornelius*, 473 U.S. at 801. As such, under the facts alleged, it is acceptable under the First Amendment for Defendants to deny Plaintiff, a politician, access to a "table" at the NNOAC and Pet Palooza events. *See Perry Educ. Ass'n*, 460 U.S. at 48 (school mail system designed for school's communication with teachers was a nonpublic forum, and thus refusal to allow union to use system to communicate with teachers, despite allowing selective access to other outside organizations, did not violate First Amendment because the union was not a member of the class for which use of the system was designed).

Finally, control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are viewpoint neutral and reasonable in light of the forum's purpose. *Cornelius*, 473 U.S. at 806. Defendants' alleged refusal to grant Plaintiff's request to be a featured participant at the NNOAC and Pet Palooza events was not based upon his views but instead upon his status as an elected political figure. *See* Dkt. # 1, ¶¶ 42, 53, 65-68; *see* Dkt. # 24-1, p. 8:16-10:25. Courts hold that such a justification, particularly where the speaker retains access to various "alternative channels" of communication, is reasonable under the First Amendment. *See Cornelius*, 473 U.S. at 809 (holding that "avoiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum); *Parkland Republican Club v. City of Parkland*, 268 F. Supp. 2d 1349, 1357-59 (S.D. Fla. 2003) (holding that city did not discriminate against club based on viewpoint because city "uniformly exclude[d] all political organizations from promoting themselves in the [p]arade," and thus restriction was reasonable

because club was "free to exercise its First Amendment rights by attending the festival at large"). Accordingly, Count I must be dismissed pursuant to Rule 12(b)(6) as a matter of law.

IV. **Count II Must Be Dismissed Because Plaintiff Does Not Have a Protected Property Interest in the Right to be a Featured Participant at Defendants' Events and Because He Did Not Attempt to Appeal the Defendants' Alleged Denial of Same**

To state a claim for a Fourteenth Amendment procedural due process violation, a plaintiff must allege that (1) defendants deprived him of a protected property interest, and (2) if so, that said deprivation occurred without adequate due process. *GEFT Outdoors, LLC v. City of Westfield*, 922 F. 3d 357, 365 (7th Cir. 2019). To have a property interest protected by the Fourteenth Amendment, a plaintiff must allege "more than a unilateral expectation of the claimed interest" and instead must allege "a legitimate claim of entitlement to it*.*" *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 621 (7th Cir. 2012). "An entitlement of this magnitude arises when statutes, regulations, or a contract establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Id*. Similarly, a protected property interest "exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

Here, Plaintiff claims that Chief Walsh's approval of his request to attend the NNOAC event in his "official capacity as [a] State Representative" is the genesis of his "protectable property interest." *See* Dkt. # 1, ¶¶ 62, 97-99. Notably, since Plaintiff does not allege that the Township Defendants ever offered such an approval with respect to the Pet Palooza event, Plaintiff's purported basis for a protected property interest does not even exist with respect to that event. *See* Dkt. # 1, ¶¶ 38-49, 89-103. Regardless, since Plaintiff's supposed property interest in being a featured participant at the Village's NNOAC or any past event admittedly does not arise from a statute, regulation, or contract, it cannot form the basis for a constitutionally protected property interest in this case. *See Santana*, 679 F.3d at 621 (dismissing procedural due process

claim because plaintiff did "not point to any statute, regulation, or contract that suggest[ed] his work as a consultant for private clients might be a constitutionally protected property interest").

Nor does Plaintiff contend that Chief Walsh or any of the Defendants' alleged ability to withdraw approval of his request to attend the NNOAC event in his official capacity was "clearly limited" in any way. *See Khan*, 630 F.3d at 527-28 (noting that Section 8 housing recipients have protectable property interest in continued participation in the program but reminding that recipients "do not have a protected right that entitles them to due process when they are denied a specific Section 8 housing unit because landlords have considerable discretion in making final tenancy decisions"); *Glatt v. Chicago Park Dist.*, 847 F. Supp. 101, 104-05 (N.D. Ill., 1994) (plaintiff failed to allege that park district deprived him of a protected property interest "by failing to assign space D-19 to him" because marine director clearly had "discretionary power to assign mooring spaces" and plaintiff "failed to allege any other source of entitlement to D-19").

Furthermore, in support of his supposed property interest, Plaintiff claims that by revoking his ability to be a featured participant at the Village's NNOAC event, Defendants have deprived him of access to a critical "public platform" by which to "effectively communicate and engage with his constituents." *See* Dkt. # 1, ¶¶ 1-2, 19. Such a platform, he claims, has been imperative to the performance of his duties as an elected representative "over the course of his political career." *See* Dkt. # 1, ¶¶ 1-2, 19. Such a speculative claim of potential impairment to one's future ability to perform his employment duties, however, does not plausibly allege the existence of a protected property interest. *See Khan*, 630 F.3d at 527-528 (holding that plaintiff "has no protected property interest in future HAP contracts with [vendor], so his procedural due process claim on that basis fails"); *see also Leroy v. New York City Bd. of Elections*, 793 F. Supp. 2d 533, 537 (E.D. N.Y., 2011) (collecting cases to conclude that the "Supreme Court has long held that there is no property or liberty interest in an elected office" nor in the "political candidacy" for any such office).

Lastly, Plaintiff contends that he was deprived of adequate due process because he was not "provided with any procedure to challenge the denial of his request," and, even if any such procedure were provided, "it would have been futile" because the denial was "communicated to him only seven days prior to the event." *See* Dkt. # 1, ¶¶ 100-103. A local governmental entity, however, "cannot be held to have violated due process requirements when it has made procedural protections available and the plaintiff has simply refused to avail himself of them." *Tucker v. City of Chicago*, 907 F.3d 487, 492 (7th Cir. 2018).

Again, it bears repeating that Plaintiff's procedural due process claim centers upon the alleged lack of process offered by the Village, not the Township Defendants. *See* Dkt. # 1, ¶¶ 89-103. Still, the Village's Code of Ordinances provides a process to appeal the revocation of a permit, and, notably, requires that any appeal be submitted within five days and that a hearing may be held shortly thereafter. *See* Village Code, Title IX, sec. 105.06.[2] Likewise, the Tinley Park-Park District, which ostensibly manages the use of Freedom Park, has a General Use Ordinance that states that if an application is denied, the applicant may appeal the denial to the Board, or, "if time for full review is not available," then the applicant may appeal "to the appropriate state or federal court." *See* Tinley Park-Park Dist. Gen. Use Ord., sec. 6(f).[3] As such, even if Plaintiff had a protected property interest, he still was not deprived of adequate due process in this case.

## CONCLUSION

WHEREFORE, Defendants, ORLAND TOWNSHIP and PAUL O'GRADY, respectfully request that this Court grant their Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice, and that Defendants be awarded all other relief as is equitable and just.

---

[2] Available online at: https://codelibrary.amlegal.com/codes/tinleypark/latest/tinleypark_il/0-0-0-86220 (last accessed November 1, 2023).

[3] Available online at: https://www.tinleyparkdistrict.org/general-use-ordinance-2/ (last accessed November 1, 2023).

                Respectfully submitted,

                **PAUL O'GRADY AND ORLAND TOWNSHIP**

By:   <u>*/s/ K. Austin Zimmer*</u>
       K. Austin Zimmer
       *One of their Attorneys*

K. Austin Zimmer (#6276227)
Joseph A. Giambrone (#6309071)
Michael A. Albert (#6320206)
**DEL GALDO LAW GROUP, LLC**
1441 S. Harlem Ave, Berwyn, IL 60402
(t) 708-222-7000 │ (f) 708-222-7001
zimmer@dlglawgroup.com
giambrone@dlglawgroup.com
albert@dlglawgroup.com
*Attorneys for Defendants Paul O'Grady and Orland Township*