# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT RITA, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-04931 |
| ) | |
| VILLAGE OF TINLEY PARK, an ) | Hon. John J. Tharp, Jr. |
| Illinois Municipal Body; ORLAND ) | |
| TOWNSHIP, and Illinois Municipal Body; ) | |
| MICHAEL GLOTZ, an individual; and ) | |
| PAUL O'GRADY, an individual, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANTS VILLAGE OF TINLEY PARK AND MICHAEL GLOTZ'S SURRESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RULE TO SHOW CAUSE

NOW COME the Defendants, VILLAGE OF TINELY PARK and MICHAEL GLOTZ, by and through their attorneys Griffin Williams McMahon & Walsh, LLP, and responds in opposition to Plaintiff's Motion for Rule to Show Cause as follows:

1. On July 28, 2023, Mr. Rita filed an Emergency Motion for a Temporary Restraining Order ("TRO") asserting that his First Amendment Rights could be impacted if he were not permitted to set up a table at the Village of Tinley Park's ("the Village") "National Night Out" in his "official capacity" as opposed to speaking with constituents without a dedicated table. Judge Manish Shah held a hearing and denied the TRO. Judge Shah concluded "that the likelihood of success on a claim that the First Amendment requires the Village to allow plaintiff to have a table is not strong. Applying the sliding scale approach to injunctive relief, this court concludes (again on a very limited record) that the harm to the Village that comes

from compelling it to endorse plaintiff's speech outweighs the harm to plaintiff. Plaintiff is allowed to attend the event, speak to his constituents there, and express his views." Dkt. # 11.

2. After the loss, Mr. Rita filed a motion for rule to show cause against the Village asserting that it should be held in contempt because it allegedly did not notify the Court during the July 28, 2023, hearing on Mr. Rita's emergency motion for a temporary restraining order that Michael Hastings intended to set up a table at the "2023 National Night Out."

3. Mr. Rita also suggests that this Court should hold the Village in contempt because it allegedly did not notify the Court after August 1, 2023, that Mr. Hastings entered the event with a table even though he did not have permission to do so, and at a time the Village had not been served with process in this case.

4. On October 19, 2023, the Village responded in opposition to Mr. Rita's motion for rule. Doc. # 28. The Village underscored that not only was it unaware of Mr. Hastings' intent to bring a table to the event, but Mr. Rita failed to support this conclusion with any facts. Doc. # 28 at 3-4. The Village tendered affidavits from Mayor Michael Glotz and Village Administrator Patrick Carr affirming they were indeed unaware that any politicians planned to set up a table at the National Night Out prior to the August 1, 2023, event. Doc. # 28 at Exhibits 6, 8.

5. On November 9, 2023, Mr. Rita replied. Doc. # 39. In it, he alleged the Village was aware that Mr. Hastings intended to set up a table at the event. *Id*. at 2 ¶ 1. He alleged that Village Administrator Patrick Carr told Mr. Hastings that he was permitted to set up a table at the event. In support, Mr. Rita for the first time attaches a declaration from his political compatriot Mr. Hastings. Doc. # 39-2.

6. The appearance of Mr. Hastings' declaration for the first time in Mr. Rita's reply necessitates a brief surresponse and counter affidavit from Mr. Carr. In short, Mr. Hastings' declaration is categorically false.

7. To start, Mr. Carr did not speak with Mr. Hastings about setting up a table at National Night Out at any time prior to, or during, the event. Exhibit 1, Affidavit of Patrick Carr. While Mr. Hastings did speak to Mr. Carr, he did not mention a table or tent or request permission to erect a table or tent.

8. Mr. Carr's declaration is supported by other witness testimony while Mr. Hastings' declaration is contrary to Mr. Rita's own witnesses and lacks credibility. For instance, former Chief Walsh claims that Mayor Glotz instructed him to rescind requests from politicians. Doc. # 39-1 ¶ 7. If that were true, one would have to ignore logic to believe that Mayor Glotz's own Village Administrator would concurrently grant permission to the likes of Mr. Hastings to set up a tent or table.

9. Instead, Mr. Hastings threatened Mr. Carr that something "big and bad" was going to happen to Tinley Park. Exhibit 1 at ¶ 7. In hindsight, Mr. Hastings was making reference to Mr. Rita's emergency motion for a TRO that would filed only hours later. Mr. Carr did not mislead this Court or the undersigned. He had no advance notice of Mr. Hastings' intention to bring a table or tent to the event. Exhibit 1.

10. Moreover, Chief Walsh's declaration that it was his responsibility "to review and decide applications and requests for participation at the National Night Out" not only undercuts Mr. Hastings' claim that Mr. Carr granted him permission for any purpose related to National Night Out, but establishes that Chief Walsh, not Mayor Glotz or Mr. Carr, was the decisionmaker with respect to National Night Out. Doc. # 39-1 ¶ 3.

11. Mr. Rita's continued prosecution of Mayor Glotz in the face of Chief Walsh's admission that he was the decisionmaker highlights not only the frivolity of Mr. Rita's motion but the political animus that motivates his continued prosecution of the Village and Mayor Glotz individually.

12. Mr. Hastings' timeline and characterization of events also defies logic. For example, he declares that he spoke with Mr. Carr at 9:49 a.m. and during that call received permission to attend the event and to bring a table and tent. Doc. # 39-2 at ¶¶ 5-6. However, Mr. Hastings also points to an email he sent 44 minutes later at 10:33 a.m. to Chief Walsh, Mr. Carr's subordinate, asking for permission to attend the event *without mention of a tent or table*. See Exhibit 1 to Doc. # 39-2. This begs the questions, why would Mr. Hastings ask permission to attend the event if he already received permission to attend and why didn't his email mention a tent or table? He asked permission in the email because he never discussed the issue with Mr. Carr. He didn't mention the tent or table so he could set them up by ambush at the event.

13. What's more, Mr. Hastings characterizes his email to Chief Walsh as "confirming the substance of [his] call with Patrick Carr." Doc. # 39-2 ¶ 9. As this Court can see, the email does not confirm any call with Mr. Carr, or the information contained in his declaration.

14. Consistent with the language in Mr. Rita's reply, Mr. Hastings' appearance at National Night out with a table and tent, and declaration, "w[ere] simply stunt[s] performed for the purposes of this litigation, not to mention a misuse of [judicial] resources and taxpayer money." Pl. Rep. n. 2.

15. Based on the foregoing, the Village Defendants respectfully request that this Court deny the motion for rule and for any other relief the Court deems appropriate, including the assessment of attorney fees.

WHEREFORE, Defendants VILLAGE OF TINELY PARK and MICHAEL GLOTZ, respectfully pray that this Honorable Court enter an order denying ROBERT RITA's motion for rule and for any other relief the Court deems appropriate.

Respectfully submitted,

GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP


By:*/s/ Patrick J. Walsh,*
    Patrick J. Walsh, Esq.

Patrick J. Walsh, Esq.
GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP
21 N. Fourth Street
Geneva, Illinois 60134
Phone: (630) 457-4242
Email: pwalsh@gwmwlaw.com
ARDC No. 6287629