**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Type text here

| | | |
|---|---|---|
| ROBERT RITA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 4931 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THE VILLAGE OF TINLEY PARK, an | ) | |
| Illinois Municipal Body, ORLAND | ) | |
| TOWNSHIP, an Illinois Municipal | ) | |
| Body, MICHAEL GLOTZ & PAUL | ) | |
| O'GRADY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Rita, an Illinois State Representative, is suing two municipalities, the Village of Tinley Park ("Village") and Orland Park Township ("Township"), and two individuals, Michael Glotz, the Mayor of Tinley Park, and Paul O'Grady, the Administrator of Orland Park Township, pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights arising from the denial of his requests to set up a table in his capacity as State Representative at several municipal events and the denial of his request for an event permit. Before the Court are the defendants' pending motions to dismiss the complaint for lack of jurisdiction and failure to state a claim and the motion of defendants Village and Glotz to sever the case. For the reasons set forth below, the motion to dismiss the claims against the Township and O'Grady is granted, the motion to dismiss the claims against the Village and Michael Glotz is granted in part and denied in part, and Rita's motion for a rule to show cause is denied.

## BACKGROUND

The following factual account comes from the plaintiff's amended complaint and the exhibits attached to the pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); Fed. R. Civ. P 10(c). The plaintiff, Robert Rita, is an Illinois state legislator who represents the 28th District in the Illinois House of Representatives. Am. Compl. ¶ 11, ECF No. 42. Rita alleges that the defendants violated his constitutional rights to freedom of speech, procedural due process, and equal protection of the laws when they denied his requests to set up a table in his in his official capacity at several municipal events hosted by Village and Township. These events include the 2022 and 2023 National Night Out Against Crime events, sponsored by the Village and its police department, the 2022 "Boo Bash," hosted by the Village, a 2022 "Shred Event," which Rita sought to conduct in the Village in collaboration with other local bodies, and the 2022 and 2023 Pet Palooza events, hosted by Orland Park Township.

*National Night Out Against Crime*

The controversy that led to the filing of this complaint arose out of the Village of Tinley Park's 2023 National Night Out Against Crime ("NNOAC") event. The Village's Police Department hosts the NNOAC each year, which aims to promote positive relationships between the police and the community and to honor law enforcement. *Id.* at ¶ 84. The event takes place at Freedom Park. NNOAC Poster Ex. A, ECF No. 42. According to Rita, he had participated in the event for the past several years by setting up a "table/booth with a banner displaying his name and State Representative title." Am. Compl. ¶ 33, ECF No. 42. This changed in 2022, however, when a Village representative called Rita and stated that he would not be permitted to participate, providing no explanation. *Id.* at ¶¶ 35, 36. Rita alleges that defendant Glotz directed the organizers of the event to bar Rita from hosting a table based on his "disagreement with Representative Rita's

political beliefs, a desire to reduce Representative Rita's engagement with his constituents, and a desire to disadvantage Representative Rita in future election campaigns." *Id.* at ¶ 37.

One year later, Rita again sought to host a table at the 2023 NNOAC. The Village police chief, Matthew Walsh, originally approved Rita's request to attend the event in his official capacity and to set up a table to converse with constituents. *Id.* at ¶¶ 89-90. A couple of weeks later, however, the chief changed course and emailed Rita stating that he would not be allowed to set up a booth at the event because the NNOAC "is an event to honor law enforcement and I respectfully request that we refrain from any politics." *Id.* at ¶ 92. That same day, Glotz told Rita at a seemingly unrelated meeting "that he [Rita] could not attend because he is a political figure." *Id.* at ¶ 94. Rita alleges that Glotz, based on his personal disagreement with Rita's political views and exercising his authority as chief executive of the Village pursuant to Village Municipal Code § 31.008(A), directed the police chief to deny his request. *Id.* at ¶ 93.

Shortly thereafter, Rita filed his complaint and a motion for a temporary restraining order to enjoin the Village from depriving Rita of his First Amendment rights by denying him a table at the event. Mot. for TRO, ECF No. 4. The parties appeared before Magistrate Judge Shah for an emergency hearing the same day. Tr. of TRO Hr'g Ex. 1, ECF No. 58. Counsel for the Village stated that Rita could still attend the event in his "professional capacity," and engage in political speech—so long as he did not set up a table—and that no other politicians would be permitted to set up a booth or table. *Id.* at 9:1-22, 12:4-9. Correspondingly, Rita made clear that all he was seeking was an order from the Court permitting him to set up a "a bare-type table with a cloth over with 'Representative Rita' on it." *Id.* at 13:6-9. After determining that Rita would still be able to

attend, and that he would only be barred from setting up a table,[1] Judge Shah denied the motion. Order, ECF No. 11 ("Plaintiff is allowed to attend the event, speak to his constituents there, and express his views. The extraordinary relief of a TRO is not warranted at this time.").

According to Rita, and contrary to the Village's representations during the TRO hearing, two politicians did have tables at the event: Illinois Senator Michael Hastings and Orland Township Highway Department Commissioner Antonio Rubino, who happens to be Rita's son-in-law. Am. Compl. ¶ 109, ECF No. 42. Rita, who did attend the event but was unable to set up a table, alleges that both politicians were permitted to attend in their official capacities, so the Village's contrary representations at the TRO hearing were materially false and should have been corrected.[2] *Id.* at ¶ 110. He also alleges that Glotz invited a political opponent of Rita's, Paris Walker, to attend the NCOAC event. *Id.* at ¶ 115. Rita hired a photographer who captured images of the Hastings and Rubino tables, displaying prominent signage of their names and titles. NNOAC Photos Ex. L, ECF No. 42. In further support of his claim, Rita also alleges that the defendants presented Senator Hastings with the 2023 National Night Out Community Service Award, signed by the police chief and defendant Glotz, which is attached to his motion. Award Certificate Ex. M, ECF No. 42. The certificate does not specify the recipient. *Id.*

*Boo Bash*

---

[1] Rita alleges that the Village's representation that he could participate in the event was a change in course "from their prior position barring Representative Rita's attendance as a whole." Am. Compl. ¶ 102, ECF No. 42.

[2] Rita filed a motion to require the Village to show cause why it should not be held in contempt for failing to correct the record at the TRO hearing or thereafter. [24] That motion is denied. In the context of an emergency motion filed with little notice, which was addressed in a telephone hearing that did not involve all of the principals, the Court is not persuaded that the Village deliberately misrepresented the issue of whether any other politicians were being permitted to set up booths at the event in their official capacities and concludes that a sanction is not warranted. This does not mean, however, that evidence of the presence of Senator Hastings and Commissioner Rubio at the 2023 NCCOA event has no evidentiary relevance.

In addition to the NNOAC, the Village hosts an annual "Boo Bash" for its citizens to celebrate Halloween, which Rita has participated in since 2018. *Id.* at ¶¶ 71-72. The event is hosted at the Oak Park Avenue train station in the Village. Boo Bash Email Ex. 1, ECF No. 66. In 2022, however, Rita's application for a tent and table was denied because he represented "a 'political group' rather than a local business." Am. Compl. ¶ 75, ECF No. 42. Rita alleges that Glotz directed organizers of the event to deny applications from political groups to prevent Rita, specifically, from attending. *Id.* at ¶ 76. He does not allege, however, that other politicians were permitted to set up tables at the Boo Bash.

### *Shred Event*

Rita also alleges that the Village defendants violated his rights when the Village denied his application for a permit to host his annual Shred Event in September 2022. Since 2017, Rita has collaborated with the Township Highway Commissioner, Cook County Commissioner, and Tinley Park District to host an event where constituents can dispose of private papers, controlled medications, and electronics through a secure shredding and recycling service. Am. Compl. ¶ 40, ECF No. 42. Unlike prior years, the Village required Rita to apply for a permit to host his event and his application was twice denied, citing safety concerns and inadequate staffing for traffic control. *Id.* at ¶¶ 44, 47-49. As with the NNOAC, Rita alleges that Glotz directed the Village to reject his permit applications because of his disagreement with Rita's politics. *Id.* at ¶ 51.

### *Pet Palooza*

Rita alleges that he was also barred from participating in the Township's 2022 Pet Palooza event, which is sponsored by the Township to raise funds for the Township's pet pantry. *Id.* at ¶¶ 53-54. The event is hosted on Township grounds in Orland Park. Pet-Palooza Poster Ex. E, ECF No. 42. Vendors are permitted to set up tables at the event in exchange for a small fee. Am. Compl.

¶ 55, ECF No. 42. Rita filled out an application and submitted the fee to participate, but the Township mailed back his check, denying his application because the Township was not accepting "any vendors affiliated with politics." Village Letter Ex. D, ECF No. 42. in his application, Rita had checked the box on the Pet Palooza application which designated "$30.00 per space – 'for profit' businesses/individual." Pet Palooza App. Ex. C, ECF No. 42. Rita alleges that defendant O'Grady, the Township supervisor, exercised his authority as the organizer of the event to reject Rita's application "because of his disagreement with Representative Rita's political beliefs and his desire to prohibit him from Township events." Am. Compl. ¶ 69, ECF No. 42.

Rita later went to inquire about the denial and resubmit his application at the Township Administrative Center, but a Township administrator again denied his application, explaining that political organizations were not permitted to participate as vendors. Am. Compl. ¶ 65, ECF No. 42. The Township defendants allege that Rita attempted to threaten and intimidate the Township administrator during this interaction, pressuring her to allow him to participate. Counsel for the Township subsequently sent Rita a letter, stating that he became "irate" after the Township administrator informed him that he would not be able to set up a space at the event, leading Rita to "enter her personal space and rudely point [his] finger at her." Sept. 23, 2022, Letter Ex. F, ECF No. 42. Counsel informed Rita that should he "attempt to set up and occupy space at the Event in violation of the policy," as he threatened to do, Rita would "be asked to leave, and if necessary, be removed from the premises." *Id.* Rita denies these allegations. Am. Compl. ¶ 66, ECF No. 42.

*Rita's Claims*

Based on the factual account outlined above, Rita alleges that the defendants violated his constitutional rights to freedom of speech, procedural due process, and equal protection under the law. Specifically, Rita seeks declaratory relief establishing that the defendants violated his First

Amendment free speech rights, Fourteenth Amendment procedural due process rights, and Fourteenth Amendment right to equal protection. *Id.* at ¶¶ 159, 180, 190. Additionally, Rita requests a preliminary and permanent injunction against the defendants enjoining them from violating his rights in the future. *Id.*

## ARGUMENT

The defendants filed separate motions to dismiss, one filed by defendants Village and Glotz (collectively, "the Village defendants") and one by defendants Township and O'Grady (collectively, "the Township defendants").[3] Village Mot. to Dismiss, ECF No. 52; Township Mot. to Dismiss, ECF No. 51. The Township defendants moved to dismiss Rita's complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In addition to a motion to dismiss for failure to state a claim, the Village defendants also moved to dismiss Rita's complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and, in the alternative, to sever Rita's claims against them from the claims against the Township defendants. The Court will address the arguments advanced in the motions separately.

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The Village defendants moved to dismiss Rita's complaint pursuant to Fed. R. Civ. P 12(b)(1), for lack of subject-matter jurisdiction, asserting that Rita's claims are moot. The plaintiff, as the party asserting jurisdiction, bears the burden of establishing that all jurisdictional requirements are met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-

---

[3] The defendants filed two earlier motions to dismiss. Mot. to Dismiss, ECF No. 34; Mot. to Dismiss, ECF No. 35. The Court denies these earlier motions as moot because the Court granted the plaintiff leave to file an intervening amended complaint. Order, ECF No. 41; Am. Compl., ECF No. 42.

89 (7th Cir. 2014). "In the context of a motion to dismiss for lack of subject matter jurisdiction, [the Court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff[.]" *Id.* at 588.

"[F]ederal court jurisdiction is limited to 'actual, ongoing controversies.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007). According to the defendants, "[t]o the extent there was a controversy in 2022 or 2023 when Mr. Rita filed his complaint, that case or controversy dissolved at the conclusion of those events," so the Court is divested of jurisdiction over this matter. Village Mot. to Dismiss 8, ECF No. 52.

As Rita correctly points out, however, this case falls into the well-recognized exception of cases that are "capable of repetition, yet evading review." Resp. 10-11, ECF No. 62. This exception applies when, "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). This exception is commonly applied to challenges to election regulations. *Majors v. Abell*, 317 F.3d 719, 722 (7th Cir.). An election cycle encompasses a set time period which may expire before a court is able to properly assess a claim relating to election regulations despite there being "every reason to expect the same parties to generate a similar, future controversy subject to identical time constraints." *Norman v. Reed*, 502 U.S. 279, 288 (1992). So too here. Rita's requests to participate in the events at issue were denied by the defendants only weeks, and sometimes days, before the event occurred. Further, Rita still occupies the role of State Representative, and Glotz remains the Village Mayor, so there is a real expectation that Rita may be similarly denied the opportunity to participate in his official capacity at future municipal events.

In reply to Rita's argument raising the capable of repetition, yet evading review exception, the defendants note that Rita failed to "disclose that he has fully participated in Village events since filing his original complaint," including having his application approved to attend the 2023 Boo Bash. Village Reply 4, ECF No. 66. Again, as with the defendants' argument above, Rita's recent participation in municipal events since the filing of his complaint implicates another exception to mootness: the voluntary cessation doctrine. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Therefore, the fact that Rita has participated in his official capacity in Village events since the filing of his complaint does not change the Court's analysis. The Court has subject matter jurisdiction to resolve this dispute.

### B.    Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even though this case is only at the pleading stage, the Court's review includes several exhibits that the plaintiff attached to the amended complaint, to the extent they are relevant. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice.").

1.      ***First Amendment Freedom of Speech***

Rita's first claim, and really the thrust of his entire complaint, is that the defendants violated his First Amendment rights when they denied his request to host a table in his capacity as a state legislator at Township and Village events and denied his request for a permit to host his own event on Village property. Am. Compl. ¶¶ 139-159, ECF No. 42. It is important to understand that Rita's right to attend these events—whether in his personal or official capacity—is not at issue here. To be sure, Rita alleges in his complaint that the defendants violated his rights when they denied his "requests ***to attend*** or host community events." *Id.* at ¶ 146 (emphasis added). At the emergency hearing on Rita's motion for a temporary restraining order, however, and in the subsequent briefing on the pending motions to dismiss, Rita narrowed his claim to "being able to attend these events and to do so with a table, booth, or banner as an official participant or attendee," rather than not being able to attend at all in his personal capacity, which he acknowledges he was able to do. Resp. 15, ECF No. 62; *see also* Tr. of TRO Hr'g Ex. 1, at 4:1-3, 6:5-7 ECF No. 58 ("I will say, him attending in his personal capacity and just announcing who he is, I don't believe that that's sufficient here."). For the purposes of this motion, the Court will evaluate Rita's allegations regarding each of the events in turn before separately addressing Rita's claim relating to the Village's denial of his permit for the 2022 Shred Event.

a)      <u>**Expressive Conduct**</u>

Defendants Village and Glotz argue that Rita's allegations relating to the NNOAC and Boo Bash events do not implicate the First Amendment "because setting up a table does not constitute expressive speech that falls within the scope of the First Amendment." Village Mot. to Dismiss 8,

ECF No. 54.[4] In Rita's view, the First Amendment issue is not extinguished simply because he was permitted to attend the event—setting up and hosting a table is an "inherently expressive" activity. Resp. 15, ECF No. 62. "His attendance at NNOAC with a table displaying his name and official title, for example, would demonstrate to his constituents his support for local first responders and law enforcement personnel." *Id.* According to Rita, the conduct that he sought to engage in by participating as an official attendee at these events "involves much more than the physical act of bringing and setting up a table"—it represents a meaningful opportunity to demonstrate his support of certain civic causes to his constituents. *Id.*

"It is plaintiffs' burden to show they engaged in speech or conduct that was constitutionally protected." *Uptown Tent City Organizers v. City of Chicago Department of Administrative Hearings*, 2018 WL 2709431, at *8 (N.D. Ill. 2018) (citing *Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017)). And speech is not at issue here; there is no claim that anyone restricted Rita from saying anything he wanted to say at these events. The events at issue involve restriction of Rita's conduct, not speech. Conduct may be covered by the First Amendment as inherently expressive if it evinces "[a]n intent to convey a particularized message" and "the likelihood was great that the message would be understood by those who viewed it." *Spence v. State of Wash.*, 418 U.S. 405, 411-12 (1974). That is, the conduct itself must communicate a message—the subjective intent of the individual engaged in the conduct is irrelevant. *See Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017) (holding that the female petitioner's appearing bare-chested in public was not expressive conduct protected by the First Amendment because "additional explanatory speech" was required to communicate her message of political protest);

---

[4] The Township defendants do not make a similar argument regarding Pet-Palooza in their motion, but Rita does not distinguish between the defendants in arguing that setting up a table at the events at issue was inherently expressive conduct.

*see also The Bail Project, Inc. v. Comm'r, Indiana Dep't of Ins.*, 76 F.4th 569, 577 (7th Cir. 2023) (holding that the plaintiff's act of paying cash bail did not convey its intended message of opposition to cash bail).

The *Uptown Tent City Organizers* case, cited above, is illustrative on this point. In that case, the plaintiffs sought permission from the city of Chicago to erect a tent city for individuals experiencing homelessness in front of an abandoned school because the city planned to conduct construction that would displace numerous unhoused individuals. *Id.* at *1. The city denied their request. *Id.* The plaintiffs subsequently sued the city, arguing that the denial of their request and the forced removal of the unhoused residents violated the First Amendment's freedom of speech and assembly clauses. *Id.* at *2. Granting the defendants' motion to dismiss, the court ruled that the plaintiffs' conduct was not protected by the First Amendment. The court found it important that the plaintiffs' message was communicated not through the presence of the tents alone, but "by the signs attached to the tents and other written messages." *Id.* at *10. Invoking the second element of the *Spence* test, the plaintiffs argued that "there was a great likelihood their message would be understood by those who viewed it" because they handed out leaflets and other materials to passersby. *Id.* As the *Uptown* court explained, the passing out of leaflets and other materials to individuals on the street supported the opposite conclusion because the communication of their message entailed "additional explanatory speech." *Id.*

Like the plaintiffs' efforts to erect a tent city in *Uptown*, the basic act of setting up a table at a municipal event, without additional speech, is insufficient to communicate a message. Rita claims that his attendance "with a table displaying his name and official title," would communicate to his constituents his support for the event's cause, such as support for police or the community festivity of Halloween. Resp. 15, ECF No. 62. The presence of a table with a banner displaying a

12

person's name and title, even if the event is being held for a particular purpose, is not sufficient, however, to communicate a message as to which there is a great likelihood it would be understood by those who view it. Rita might have sought to host a table at the NNOAC to publicize concerns about police misconduct, for example, or to advocate for or against the elimination of cash bail. Rita may have sought a table at the Village Boo Bash not to promote the holiday with residents, but to inform adult caregivers about potential dangers associated with trick-or-treating. His purpose in attending these events is not self-explanatory and adding a table with Rita's name on it does nothing to clarify the message (or messages) he wished to communicate.

This crucial distinction is further evidenced by the photographs of the "tables" hosted by other politicians who Rita alleges were permitted to attend the Village's NNOAC event. In those photographs, which Rita attached to his complaint, both politicians are standing behind tables with banners displaying their names and titles. That is not all the politicians brought to the event, however. Both politicians also appear to have several pamphlets and papers available for constituents, evidencing the need for additional speech to communicate their message(s), independent of the table and banner. Photographs Ex. L, ECF No. 42. *See*, *e.g.*, *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006) (actions by law schools barring military recruiters from access to law schools "were expressive only because the law schools accompanied their conduct with speech explaining it."); *Tagami*, 875 F.3d at 378 (the need for explanatory speech is "strong evidence" that conduct at issue is not expressive).

Based on the foregoing, a strong argument can be made for concluding that the defendants' conduct in denying Rita's application for a table at the NNCOA, Boo Bash, and Pet-Palooza events was non-expressive and therefore did not implicate the First Amendment. Nevertheless, the Court must also consider the close nexus between Rita's right to state his views at these events, which

no one disputes, and his ability to do so. In *Brown v. Kemp*, the Seventh Circuit recently held that the First Amendment also protects conduct and activities necessary for expression. Reaffirming that "there is 'no fixed First Amendment line between the act of creating speech and the speech itself," *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023) (quoting *ACLU v. Alvarez*, 679 F.3d 583, 596 (2012)), the Seventh Circuit nevertheless provided helpful guidance on distinguishing the line between expressive conduct, protected by the First Amendment, and non-expressive conduct, which is not. In *Brown*, individuals opposed to hunting challenged a Wisconsin statute that made "it a crime to interfere intentionally with a hunter by 'maintaining a visual or physical proximity' to the hunter, by 'approaching or confronting' the hunter, or by photographing, videotaping, audiotaping, or otherwise recording the activity of the hunter" as unconstitutional under the First Amendment. 86 F.4th 745, 753 (7th Cir. 2023) (internal citation omitted). The Seventh Circuit ultimately determined that the statute covered expressive conduct (and was therefore protected by the First Amendment) because it targeted "fundamental speech activities," namely photographing, videotaping, and recording, which "are essential to the creation of speech and also expressive in their own right." *Id.* at 779.

Unlike the hunting opponents photographing, videotaping, and monitoring the activities of hunters, hosting a table at a municipal event is *not* "essential to the creation of speech and also expressive in [its] own right." *Id.* at 779. In *Brown*, the plaintiffs were barred, full stop, from engaging in activities that intentionally interfered with hunting. The same is not true here. Rita does not deny that he was permitted to exercise his First Amendment rights in every other conceivable way at the challenged events by attending, conversing with constituents and expressing his views, wearing a button with his name and title—the list goes on.  Although Rita was not permitted to stand behind a "bare-type table with a cloth over with 'Representative Rita'

on it," this restriction left open ample alternative channels for communication. Tr. of TRO Hr'g, 13:6-8, ECF No. 12. It cannot reasonably be said that use of a table was "essential to the creation" of Rita's speech. And again, as discussed above, setting up a table is not "expressive in its own right." Accordingly, the Court concludes that Rita's ability to set up a table at the events in question does not merit First Amendment protection. [5]

### 2.    *Government Speech Doctrine*

Defendants Township and O'Grady argue that the First Amendment does not apply because the Pet Palooza event constitutes "government speech," that is speech by and on behalf of the government—not government regulation of private speech. Township Mot. to Dismiss 8-11, ECF No. 51.[6] The Supreme Court has identified government speech in a variety of contexts, including in monuments displayed on public property and government-issued license plate designs. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 472 (2009); *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 210-11 (2015). The Supreme Court has cautioned that the government-speech doctrine "is susceptible to dangerous misuse" and therefore

---

[5] Although not cited by Rita, the Court acknowledges that at least two circuits have held that setting up tables constitutes expressive conduct protected by the First Amendment to the extent that doing so **facilitates** distribution of First Amendment materials. *See ACLU v. City of Las Vegas*, 466 F.3d 784, 799 (9th Cir. 2006); *Int'l Caucus of Labor Comms. v. City of Montgomery*, 111 F.3d 1548, 1550 (11th Cir. 1997). While the Court does not question that setting up a table would have facilitated Rita's efforts to spread his message, that formulation seems substantially broader than the Seventh Circuit's assessment—"essential to the creation of speech and also expressive in its own right"—requires. As well, these cases cannot be squared with *Rumsfeld*'s observation that the Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive." 547 U.S. at 66.

[6] The Township defendants, not the Village defendants, advanced the argument that the denial of Rita's applications to set up tables was a permissible exercise of governmental speech. Rita did not distinguish between the defendants in his response brief as to this argument, however, so the Court addresses the substance of the argument as to both sets of defendants.

courts "must exercise great caution before extending our government-speech precedents." *Matal v. Tam*, 582 U.S. 218, 235 (2017).

"[S]peech that is otherwise private does not become speech of the government merely because the government provides a forum for the speech or in some way allows or facilitates it." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 34 (2d Cir. 2018) (holding that a program permitting vendors to sell food on a state-owned plaza did not qualify as government speech because there was no basis to find that the vendors and the vendors' names "are closely identified with the government 'in the public mind.'"). In this case, to determine whether the defendants' municipal events qualify as government speech, the Court considers, "(1) whether governments have traditionally spoken to the public in the manner at issue; (2) whether observers of the speech at issue would reasonably interpret it to be that of the government; and (3) whether the government maintained editorial control over the speech." *Higher Soc'y of Indiana v. Tippecanoe Cnty., Indiana*, 858 F.3d 1113, 1117 (7th Cir. 2017). This inquiry is "not mechanical," and should be "driven by a case's context rather than the rote application of rigid factors." *Shurtleff v. City of Bos., Massachusetts*, 596 U.S. 243, 252 (2022).

First, courts must consider whether governments have historically communicated with the public using the medium at issue. While evidence of historical practice weighs in favor of a finding of government speech, "a long historical pedigree is not a *prerequisite* for government speech." *Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*, 806 F.3d 1070, 1076 (11th Cir. 2015) (emphasis in original) (citing *Johanns v. Livestock Marketing Assoc.*, 544 U.S. 550, 561 (2005) (holding that government-financed beef advertisements, such as "Beef. It's What's for Dinner.," qualified as government speech because the promotions were "from beginning to end the message established by the Federal Government.")). There is a history of government-sponsored events being used to

communicate messages to the public, parades being just one example. *Leake v. Drinkard*, 14 F.4th 1242, 1248 (11th Cir. 2021). Notwithstanding the general history of governments sponsoring events for the enjoyment of the public, there is no evidence in the record at this stage regarding the history of the Pet Palooza event specifically or the Township's history sponsoring events with a particular message. The same is true as to the Village events (NCCOA and Boo Bash). Therefore, this factor does not weigh heavily in favor of finding government speech.

The second factor is whether the type of speech at issue is "often closely identified in the public mind" with a government entity, here the Township of Orland Park or the Village of Tinley Park. *Summum*, 555 U.S. at 472. Here, the explicit endorsement of their respective events weighs heavily in favor of characterizing them as forms of government speech. The Pet Palooza is actively advertised to the public as a government-sponsored event with an advertisement stating that the event is "[h]osted by Orland Township Supervisor Paul O'Grady & the Board of Trustees" for the benefit of the Township Pet Pantry. Pet-Palooza Poster Ex. E, ECF No. 42. The poster also directs interested residents to the Township's official website to keep up to date on added activities, vendors, and attractions. *Id.* A member of the public would likely understand the Township to be communicating a message through its sponsorship of the event. So, too, the events sponsored by the Village. The NNOAC posters, for example, state that the event is presented by the Village of Tinly Park and the Village police department, refer interested persons to the Village's web site, and relate that the event promotes "Police – Community Partnerships." A lengthy listing of participants includes law enforcement officers from the Village and other agencies, first responders, public works employees, "and Representatives from Local Organizations, Businesses, Schools, and Churches—but no politicians. The 2022 Boo Bash is similarly alleged to have been sponsored by the Village "and intended to showcase local businesses"—not political groups.

The third factor is whether the government entity exercised sufficient editorial control over the message. On this point, the Township argues that it "conveyed an important message to the public about the pet-centric and non-partisan nature of their support for both the Pet-Palooza event and its object of raising funds for the Township's pet pantry," by exercising its discretion to permit pet-centered businesses to participate, while declining the same platform to political officials. Township Mot. to Dismiss 10, ECF No. 51. This is reflected in the Township's advertising of the event as including "[m]ore than 75 pet-friendly/pet-centered businesses and organizations." Pet Palooza Poster Ex. E, ECF No. 42. The Township's efforts to limit the official attendees to vendors with some underlying connection to the pet-centric cause is evidence of editorial control to keep the focus of the event "squarely on raising funds for the Pet Pantry," which also supports a finding of government speech. Township Mot. to Dismiss 9, ECF No. 51. And, again, the same holds true of the events sponsored by the Village. In each case, the Village sponsored the event to promote community objectives and constituencies and tailored the list of official participants to representatives of those constituencies.

Upon review of the relevant factors, the Court concludes that the Township's Pet Palooza and the Village's NNOAC and Boo Bash events qualified as government speech, such that the traditional First Amendment restraints on private speech do not apply. In response, Rita argues that he "does not seek to compel the Village or Township to endorse, subsidize, or take other action to accommodate his speech." Resp. 18, ECF No. 62. Instead, he "seeks to lift the prohibitions that are clearly targeted at him, prohibitions that are not permissible government speech." *Id.* This argument fails to recognize, however, that the government may express its views with "assistance from private sources for the purpose of delivering a government-controlled message," such as by elevating pet-centric vendors as official participants. *Summum*, 555 U.S. 468. Additionally, as

described above, government speech requires some measure of editorial control so the prohibition on official political attendees is further evidence that the Township was engaged in its own speech by permitting certain official attendees, rather than providing a forum for the public at large.

### 3.    *Forum Analysis*

Notwithstanding the preceding discussion, the Court also undertakes a traditional forum analysis. In evaluating a First Amendment claim, courts must first determine whether the plaintiff's claim implicates a traditional public forum, a designated public forum, or a non-public/limited public forum. *See Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Traditional public fora encompass streets, sidewalks, parks, and other areas that "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)). The government can also designate a space as a public forum by "intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 802 (1985). Traditional and designated public fora receive the greatest protection against government regulation such that any restriction based on the content of the speaker's message must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Perry*, 460 U.S. at 54. The government may also impose reasonable time, place, and manner restrictions "so long as the regulation is content-neutral,  serves a significant governmental interest, and leave open adequate alternative channels for communication." *U. S. Postal Serv. v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 132 (1981).

Property is not automatically treated as a public forum because it is owned by the government. *Id.* at 129. Nonpublic fora, or "[p]ublic property which is not by tradition or

designation a forum for public communication," are subject to a lesser standard of First Amendment scrutiny. *Perry*, 460 U.S. at 46. In these spaces, the government may implement regulations so long as they are reasonable and viewpoint neutral. *Id.*

At first glance, Rita's claim might seem to fall squarely in the traditional public forum category: he alleges that his First Amendment rights were violated at public municipal events, where individuals were engaged in speech activities, hosted in parks and other traditionally public spaces that receive the highest degree of First Amendment protection. There are two issues with this analysis, however. First, the Supreme Court "recognizes a distinction between claims asserting access to a forum and claims asserting access to a captive audience." *Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 588 F.3d 523, 530 (7th Cir. 2009) (citing *Minn. State Bd. for Cmty Coll. v. Knight*, 465 U.S. 271, 286 (1984)). Rita was not denied access to these events or spaces, as he had access to the event like any other regular attendee. Am. Compl. ¶ 106, ECF No. 42. He was only denied the ability to set up a table and banner at the event to hold himself out as an official participant and sponsor of the event—this is the relevant First Amendment issue for the purposes of a forum analysis.

Second, although the events at issue took place in settings ordinarily designated as traditional public fora, the First Amendment does not bar the government from "temporarily reserving a portion of what is a traditional public forum for the limited expressive activity of particular groups or speakers." *Parkland Republican Club v. City of Parkland*, 268 F. Supp. 2d 1349, 1355 (S.D. Fla. 2003) (finding that a city's policy of excluding political organizations from participating in a city parade was a reasonable viewpoint-neutral regulation of a limited public forum). The Court has held "that a government entity may create a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects," and impose "reasonable

20

and viewpoint-neutral restrictions" to preserve that forum's purpose. *Summum*, 555 U.S. at 470 (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)). For example, in *People for Ethical Treatment of Animals v. Giuliani*, a district court for the Southern District of New York characterized New York City's "CowParade" public art exhibit as a non-public forum, even though the exhibit took place on city sidewalks, a forum that would otherwise "occup[y] a special position in terms of First Amendment protection." 105 F.Supp.2d 294, 311 (quoting *United States v. Grace*, 461 U.S. 171, 177 (1983)). In that case, New York City co-sponsored the staging of approximately 500 life-size cow sculptures around the city, each with a unique artistic vision and message. *Id.* at 298. Individuals and groups were invited to "adopt" a cow and select a design or commission a personalized design, subject to organizers' approval. *Id.* PETA sought to adopt two cows, but organizers rejected one of its proposed designs. *Id.* at 300. In denying PETA's argument that the city lacked the authority to designate public sidewalks for a limited expressive purpose, the court found that "where the government, in order to serve legitimate purposes, carves out, within traditional public forum property, a portion of space not open to the general public, either specifically or incidentally limiting some expressive activities to particular speakers or subjects," it creates a nonpublic forum, which is subject to a lesser degree of scrutiny under the First Amendment.[7] *Id.* at 314.

Just as the government can exercise its authority to prevent groups or individuals from engaging in speech activities on public property through reasonable time, place, and manner restrictions, the government may also exercise its authority to create a limited public forum by

---

[7] The *Giuliani* court declined to decide whether the forum could be best described as a nonpublic forum or a limited public forum because the standard of scrutiny is the same. 105 F.Supp.2d at 318-19 (the forum "necessarily must qualify as either a nonpublic forum or a limited public forum arising from the opening of a nonpublic forum, in accordance with this Court's forum analysis as set forth above. In either event, the outcome here would be the same.").

designating a public space for a specific use and purpose. As in the *Giuliani* and *Parkland* cases

cited above, the Village and Township "carve[d] out" traditional public spaces to host events with

a limited expressive purpose: to support public safety and police-community relations, to promote

the Township pet pantry, and to allow residents to celebrate a holiday as a community. Therefore,

Rita's First Amendment claim implicates his right to access limited public fora—public spaces

held out by the government for a specific use or message at a particular time.

### 4.   *Standard of Judicial Scrutiny*

The next step is to apply the requisite level of scrutiny to the regulations at issue. Where

the government regulates speech in a limited public forum, the restriction must be "reasonable in

light of the purpose served by the forum," and may not "discriminate against speech on the basis

of its viewpoint." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829

(1995) (internal citation omitted). The Supreme Court has been clear to distinguish between

"content discrimination, which may be permissible if it preserves the purposes of that limited

forum, and, on the other hand, viewpoint discrimination, which is presumed to be impermissible

when directed against speech otherwise within the forum's limitations." *Id.* at 829; *Cornelius*, 473

U.S. at 806 ("Although a speaker may be excluded from a nonpublic forum . . . if he is not a

member of the class of speakers for whose especial benefit the forum was created . . . the

government violates the First Amendment when it denies access to a speaker solely to suppress

the point of view he espouses on an otherwise includible subject.") (internal citation omitted).

Rita alleges that the defendants engaged in viewpoint discrimination because other

politicians were permitted to set up and host tables. Resp. 16, ECF No. 62. Specifically, Rita

alleges in his complaint that other politicians attended the 2023 NNOAC with tables and that the

Village was aware of their intent to do so but did not inform the politicians that they could not

bring tables on account of their status as political officials. Am. Compl. ¶ 108, ECF No. 42. Rita supports this allegation with photographs, which appear to have been taken at the event. Photographs Ex. L, ECF No. 42. Though evidence is not required at the pleading stage, this is sufficient to give rise to a plausible claim of viewpoint discrimination with respect to the 2023 NNOAC. The Village defendants do not attempt to defend the alleged viewpoint discrimination; instead, they contest this version of events, stating that the politicians set up the tables without Village officials' knowledge or permission. Village Mot. to Dismiss 18, ECF No. 54. At this stage, however, the Court must accept all well-pleaded facts in the complaint as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. NCAA*, 683 F.3d 328, 334 (7th Cir. 2012). Based on the facts alleged in the complaint, Rita's claim arising from the 2023 NNOAC event would survive under a traditional forum analysis. However, in light of the Court's earlier determinations that erecting a table at a municipal event is not expressive conduct protected by the First Amendment, and that in sponsoring these events the Village and Township were permissibly engaging in government speech, this claim remains dismissed.

With respect to the Boo Bash, Pet Palooza, and 2022 NNAOC events, Rita's claims of viewpoint discrimination fail. He alleges that "other government officials were permitted to attend" these events, but he makes no allegations regarding their ability to host a table, which is the First Amendment issue here. Am. Compl. ¶ 79, ECF No. 42. The defendants' decision not to accept "vendors affiliated with politics" restricts certain speech based on its content, rather than its viewpoint. *Id.* at ¶ 59. In such cases, the regulation only needs to be "reasonable in light of the purpose served by the forum." *Cornelius*, 473 U.S. at 806. As the defendants point out, "avoiding the appearance of political favoritism is a valid justification for limiting speech in a nonpublic forum." *Id.* at 809; Township Mot. to Dismiss 15, ECF No. 51. Particularly considering the

community- and family-oriented nature of these events, it is reasonable for the defendants to restrict politicians, whose presence could be controversial and detract from the apolitical purposes of the events, from participating as official attendees.

### 5. *Shred Event*

In addition to his First Amendment claims arising from the denial of his requests to attend municipal events as an official attendee with a table, which the Court addresses above, Rita alleges that the Village defendants violated his First Amendment rights when they denied his permit requests to host his annual Shred Event on Village property. The complaint does not specify where the Shred Event was to be held, only that it was to be held either "in public gathering places . . . or in private locations made available to the public for the specific event." Am. Compl. ¶ 148, ECF No. 42. Rita alleges that the Village's reason for denying his permit—an inability "to secure adequate traffic control staffing"—is "unsubstantiated and disingenuous." *Id.* at ¶¶ 47, 50. The real reason, according to Rita, was Glotz's personal disagreement his Rita's political beliefs. *Id.* at ¶ 51.

As with his request for a table, the Village defendants argue that the Shred Event, "does not, under even the most liberal interpretation, constitute expressive speech." Village Reply 8, ECF No. 66. Rita cites to his support for "the secure disposal of prescription medications and confidential documents (which go hand-in-hand with his constituents' safety)," as the message the event would communicate. Resp. 15, ECF No. 62. As an initial matter, unlike Rita's request to host a table at an event sponsored by a government entity, Rita's request to host an independent event on public property communicates a much clearer and more direct message to the public. While his setting up of a table could be done to facilitate communication about countless subjects, including a message contrary or tangential to the event's objective, Rita's request to sponsor his

24

own event conveys his full support for the event's purpose: that prescription medications and other confidential documents should be disposed of in a secure way.

Further, regardless of the exact message conveyed, Rita's event request is of a fundamentally different character than his desire to erect a table at a government-sponsored event that he is otherwise permitted to attend. The Village's denial of Rita's permit requests more closely mirrors the situation in *Brown v. Kemp*, the Seventh Circuit case cited earlier, where the court struck down the statute that targeted "the expressive activities of . . . anti-hunting advocates," such as interfering in the activities of hunters by photographing or videotaping them. 86 F.4th at 780. Like the individuals in *Brown*, the Village's denial of Rita's event permit resulted in him being unable to "make use of a protected 'medium for the communication of ideas,'" in this case hosting a public event, "for purposes of shaping public discourse." *Id.* at 779. Therefore, although Rita's Shred Event might not cue the same automatic First Amendment impulse as a political rally or protest, it involves the use of speech, in a public space, to communicate a message and is thus entitled to First Amendment protection. *See Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000) (holding that "beggars" are protected by the First Amendment because "their messages cannot always be separated from their need for money.").

Because Rita's Shred Event qualifies as expressive conduct, then his request to host the event on public property is subject to reasonable time, place and manner restrictions. Such restrictions are permissible so long as they are "justified without reference to the content of the regulated speech," "narrowly tailored to serve a significant governmental interest," and "leave[s] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citation omitted); *see also Coal. To Mar. on the RNC v. City of Milwaukee*, No. 24-CV-0704-BHL, 2024 WL 3358149, at *9 (E.D. Wis. July 8, 2024)

("Reasonable time, place, and manner restrictions can include permitting schemes that limit expression in public places."). In this case, the Village requires individuals and groups who seek to use public property for events and other gatherings to obtain the Village's advanced approval through a permit. Here, the Village denied Rita's permit request on the basis that it could not secure proper traffic control, which it described as an issue in previous years and difficult to rectify because of other events occurring on the same date. Email Correspondence Ex. B, ECF No. 42. Rita subsequently resubmitted his permit request for a later date, but it was denied again on the same basis, citing safety and traffic concerns. Am. Compl. ¶¶ 34-35, ECF No. 42.

Importantly, the Village does not—and perhaps on a motion to dismiss, cannot—provide detail regarding the criteria that governs the permit process, such that the Court could properly evaluate the Village's permit process to determine whether it has sufficient safeguards and is narrowly tailored to afford adequate First Amendment protections. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002) ("Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content."). For this reason, the Village's motion to dismiss Rita's First Amendment claim arising from the denial of his Shred event request permit is denied. Rita's complaint alleges that his request for a permit was repeatedly denied not for a content-neutral reason, but because Glotz impermissibly exercised his discretion and denied the permit on account of his personal and political animus. As such, it states a plausible claim for relief.

### C. Procedural Due Process

In Count II of the complaint, Rita asserts a procedural due process claim, alleging that the Village and Township's denials of his requests to host a table deprived him of a protectible property interest without sufficient procedural due process. Am. Compl. ¶¶ 160-180, ECF No. 42. "The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life,

liberty, and property without due process of law." *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quotation omitted). To state a claim for a violation of procedural due process under Section 1983, a plaintiff must allege, "(1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). In their motions to dismiss, the defendants argue that Rita has not properly identified a protectable property interest in his request to host a table at these municipal events, so his claim should be dismissed. Township Mot. to Dismiss 15-16, ECF No. 51; Village Mot. to Dismiss 12-14, ECF No. 54.

To establish a protected property interest in hosting a table at these events, Rita must have "more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). A party has a legitimate claim of entitlement where "statutes, regulations or a contract . . . establish a framework of factual conditions delimiting entitlements which are capable of being explored at a due process hearing." *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 621 (7th Cir. 2012) (cleaned up). Rita does not cite to any statute or regulation that supports his entitlement to participate with a booth at Village and Township events. Instead, he claims that "a property interest can be anchored in mutually explicit rules or understandings." Resp. 19, ECF No. 62. More specifically, Rita claims that because he "utilized the appropriate channels to notify event organizers of his desire to participate" and "completed, and submitted all written application materials where needed," he "obtained a protectible property interest in his attendance and participation." *Id.* at 20.

The case that Rita cites in support, *Ulichny v. Merton Cmty. Sch. Dist.*, does not stand for the proposition that a property interest can be tied to "mutually explicit rules or understandings"

alone.[8] In that case, the Seventh Circuit quoted the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) for the notion that property rights, "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." 249 F.3d 686, 700 (7th Cir. 2001). In fact, in *Ulichny*, the Seventh Circuit ultimately held that a high school principal did not have a protected property interest in her job duties because the right to perform the duties associated with role as principal was "neither enumerated in Ulichny's employment contract nor in any Wisconsin state statutes." *Id.* at 702.

Rita also claims that there is no indication that the defendants "were to be afforded any degree of discretion in evaluating Representative Rita's participation requests," because the events did not set out evaluation criteria for prospective official attendees in the application process. Resp. 21, ECF No. 62. This argument is nothing more than a conclusory statement that the defendants did not have the discretion to deny applications of official attendees at municipal events. This assertion is incorrect, however, because the defendants did have discretion to deny applications to participate as an official attendee, which they exercised in this case. This argument also contradicts the Court's prior determination that municipal events of this kind constitute government speech and are therefore subject to the editorial control of the government. To suggest otherwise, as Rita does, would mean that the defendants must permit ***absolutely anyone*** who submits a by-the-book application to host a table at these events, including police abolitionists at the NNOAC, PETA at the Pet Palooza, and religious opponents of Halloween at the Boo Bash. Further, Rita's assertion that the defendants lacked the discretion to deny his applications is belied by contradictory statements elsewhere in the complaint. Am. Compl. ¶ 68, ECF No. 42 ("O'Grady – as the

---

[8] It is unclear what this phrase means. Rita's brief includes it in a quote purportedly appearing in *Ulichny* at page 700, but it does not appear there or anywhere else in the opinion. It may be a misquote of that case's reference to "existing rules or understandings."

Township Supervisor and primary Township organizer of Pet Palooza – had authority to approve or reject Representative Rita's Pet Palooza applications."); *id.* at ¶ 31 ("Glotz, as the mayor of the Village, has authority to control who can attend and set up exhibitions and other display tables at the NNOAC event.").

### D.      Equal Protection

In addition to his procedural due process claim, Counts III and IV of Rita's complaint assert a claim pursuant to Section 1983 for violation of his right to equal protection under the law. Though not required at the pleading stage, Rita asserts two theories to support his equal protection claim: (1) the defendants denied him his fundamental right to freedom of speech, and (2) the defendants intentionally treated Rita differently than other similarly situated individuals with no rational basis for the differential treatment, which is also referred to as a class-of-one equal protection claim. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1002 (N.D. Ill. 2017).

### 1.      *Fundamental Right*

As the Township defendants rightly point out, Rita's equal protection claim for the denial of his fundamental rights is just a "repackaged" version of his First Amendment claim and should therefore be dealt with the same fashion. Township Mot. to Dismiss 20, ECF No. 51; *see Bogart v. Vermilion Cnty., Illinois*, 909 F.3d 210, 215 (7th Cir. 2018) ("[T]he claim must fail because the same considerations and evidence that defeat her First Amendment claim cause the same claim repackaged under the Equal Protection Clause to fail."). The only notable difference between the First Amendment and equal protection claims is that Rita does not connect his equal protection claim to his allegations surrounding the Shred Event. As a result, the Court's determination that Rita alleged a plausible First Amendment claim relating to the Village's denial of his permit request has no relevance to his equal protection claim.

Otherwise, the Court's preceding analysis controls, which ultimately concluded that Rita failed to state a claim under the First Amendment with respect to the Village and Township events because setting up a table is not expressive conduct and the municipal events at issue encompassed government speech. *See St. John's United Church of Christ v. City of Chicago*, 502 F. 3d 616, 638 (7th Cir. 2007) (noting that "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts").

## 2. *Class-of-One Theory*

In addition to his equal protection claim premised on the defendants' denial of his fundamental First Amendment rights, Rita brings an equal protection claim under a class-of-one theory. "[A] class-of-one equal protection claim has merit when it 'alleges that [the plaintiff] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). On a motion to dismiss, courts must evaluate whether "the action would be inexplicable unless animus had motivated it," that is, the plaintiff carries the burden to "negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014) (quoting *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir.2005)) (affirming the district court's decision granting the motion to dismiss where the police had independent probable cause to search the petitioner's home on suspicion of her growing marijuana, so as to sufficiently undermine her claim of animus on a class-of-one theory).

As with Rita's First Amendment claims, the Court's analysis varies depending on the event at issue. With respect to the 2023 NNOAC alone, Rita has sufficiently alleged that other similarly

situated individuals (*i.e.*, other politicians) were able to set up tables at the event and were not informed by the Village that they could not attend or bring a table. Am. Compl. ¶ 113, ECF No. 42. In the motion to dismiss, the Village defendants do not provide a rational basis for the alleged difference in treatment. Instead, the Village defendants challenge Rita's version of events, stating that the politician who attended "simply barged in." Village Mot. to Dismiss 18, ECF No. 54. This contradicts Rita's allegation that the Village was aware of the other politicians' intentions to set up tables in advance of the event, but the Village did not inform them that they would not be permitted to do so, as they did with Rita. Am. Compl. ¶¶ 112-14, ECF No. 42. At this stage, however, the Court accepts all well-pleaded facts in the complaint as true. *Agnew*, 683 F.3d at 334. Therefore, because the Village defendants offer no rational basis for this differential treatment, and instead only contest the factual basis of Rita's claim, Rita's class-of-one claim survives with respect to the 2023 NNOAC event.

This is not true with respect to the other municipal events. When it comes to the Pet Palooza and Boo Bash, Rita does allege that the denial of his request to host a table was driven by the defendants' personal animus and desire to "disadvantage Representative Rita in future election campaigns and to deny him access to the constituents he serves." Am. Compl. ¶ 77, ECF No. 42. What he fails to do, however, is allege that he was treated differently from other similarly situated individuals, namely other politicians, when it came to his request to host a table at these events. Rita alleges that other politicians *attended* the Boo Bash event—not that other politicians were permitted to host tables, which is the relevant issue for this claim. *Id.* at ¶ 79. Therefore, his class-of-one equal protection claim fails with respect to these events. Finally, with respect to Rita's request to host the annual Shred event, the Village provided a rational basis for its decision at the

time it denied his permit: Rita's permit request did not adequately address the cited traffic control and safety concerns.

### E.    Additional Arguments

In addition to the arguments attacking the merits of the plaintiff's claim, the Village defendants include several alternative arguments in their motion to dismiss. Though the Court already granted the Village defendants' motion to dismiss on the merits, except as to Rita's claim arising from the Shred Event, it briefly addresses each of these arguments.

#### 1.    *Monell Liability*

The Village defendants argue that Rita's complaint has not passed the hurdle to properly allege *Monell* liability against the Village on his Section 1983 claims. Village Mot. to Dismiss 14, ECF No. 54. A municipality may not be held liable under Section 1983 unless the plaintiff's alleged injury was caused by an "official policy, widespread custom, or action by an official with policy-making authority." *Dixon v. Cnty. Of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Rita has sufficiently alleged the existence of a policy custom or practice in his complaint. He refers to four separate instances which involved the repeated denials of his request to host a table at Village events as well as the denial of his request for an event permit. Further, Rita connects these denials to the same alleged personal animus and distaste for his political positions that he claims is motivating the defendants' decisions. In his complaint, Rita alleges facts that set forth a pattern of similar constitutional violations to give rise to an inference of a widespread custom or practice. This is enough at the pleading stage. *See Arquero v. Dart*, 587 F. Supp. 3d 721, 729 (N.D. Ill. 2022) ("[A] plaintiff does not have to come forward with facts proving a widespread practice at the pleading stage – he need only state a plausible claim for relief.").

The complaint also adequately alleges the Village's liability because it asserts that the actions taken were directed by Mayor Glotz, who plausibly qualifies as an official with policy-

making authority. The Village contends that "[i]t was Chief Walsh, not Mayor Glotz, who had decision-making authority," Reply at 14, ECF No. 66, but that is a fact question to be resolved (though it may not be material since the chief of police with authority to define the parameters of attendance at community events likely qualifies as an official with policy-making authority in any event).

### 2.   *Qualified Immunity*

Defendant Glotz argues that he is entitled to qualified immunity because there is no "clearly established" law that denying an event attendee permission to bring a table and participate as an official sponsor violates the First Amendment. Village Mot. to Dismiss 18, ECF No. 54. The defendants also add that "Rita alleges that Chief Walsh made the decision to deny a table at the event, not Mayor Glotz." *Id.* at 19. This is not a correct characterization of the complaint. Rita consistently alleges that Glotz instructed Chief Walsh to deny Rita's request to set up a table because of his disagreement with Rita's political beliefs. Am. Compl. ¶¶ 93, 95, ECF No. 42. Regardless, based on the Village defendants' motion to dismiss, the request for qualified immunity appears limited to Rita's First Amendment claims arising from the NNOAC and Boo Bash events. Based on the rulings above, only Rita's equal protection claim and First Amendment claim arising from the Shred Event survive, so there is no need to address the merits of Glotz's request for qualified immunity.

### 3.   *Improper Reincorporation*

The Village defendants also seek to dismiss Rita's complaint for "improper reincorporation" because the amended complaint reincorporates allegations directed at the Township defendants in claims against the Village defendants. Village Mot. to Dismiss 19, ECF No. 54. As the Court already granted the Village defendants' motion to dismiss in part, it notes

only briefly that Rita's incorporation of his preceding allegations did not make the complaint sufficiently confusing to warrant dismissal on this basis. *See Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021).

## MOTION TO SEVER

The motion to sever is denied as moot. The Township defendants' motion to dismiss has been granted in its entirety, so there is no surviving claim to sever from the claims which survive against the Village defendants.

\*      \*      \*

For the reasons set forth above, the Township defendants' motion to dismiss [51] is granted and the Village defendants' motion to dismiss [52] is granted in part and denied in part. The Village defendants' motion to dismiss [52] is granted as to Rita's First Amendment claims based on the NNOAC and Boo Bash events and denied as to Rita's request for a Shred event permit. The Village defendants' motion to dismiss is also denied as to Rita's equal protection claim regarding the 2023 NNOAC event and granted as to all other claims.

Plaintiff has leave to file a second amended complaint by October 21, 2024.

Dated:  9/30/24

John J. Tharp, Jr.
United States District Judge